THOMAS S. HIGGINS, *ET AL.*, PLAINTIFFS-RESPONDENTS, v. THE ADVISORY COMMITTEE ON PROFESSIONAL ETHICS OF THE SUPREME COURT OF NEW JERSEY, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued May 24, 1976—Reargued January 24, 1977— Decided April 6, 1977.

### SYNOPSIS

Suit was brought by attorneys who were also chosen freeholders, seeking a declaratory judgment as to the validity and scope of an opinion by the Advisory Committee on Professional Ethics concluding that a member of the board of chosen freeholders who is an attorney may not ethically represent a criminal defendant indicted for a crime in the county in which the freeholder-attorney holds office. The Superior Court, Chancery Division, denied a motion to dismiss the complaint, and, after the Appellate Division granted defendants' motion for leave to appeal, direct certification of both the appeal and the pending chancery suit was ordered. The Supreme Court, Sullivan, J., held that the Advisory Committee's opinion was correct.

124

Mr. Michael A. Santaniello, Deputy Attorney General, argued the cause for defendants-appellants (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Santaniello, on the brief).

Mr. John A. Yacovelle, Jr., argued the cause for plaintiffs-respondents (Messrs. Yacovelle & Cohn, attorneys).

Mr. Martin Verp argued the cause for amicus curiae The New Jersey Association of Chosen Freeholders.

The opinion of the court was delivered by

SULLIVAN, J. This proceeding, in the main, involves the validity of Opinion No. 291 issued by the Advisory Committee on Professional Ethics, a committee appointed by the Supreme Court pursuant to R. 1:19-1. The Advisory Committee has jurisdiction to accept and answer inquiries from a bar association, member of the bar, or this Court concerning proper conduct for a member of the legal profession under the Disciplinary Rules of the Code of Professional Responsibility and other rules of this Court governing the practice of attorneys. R. 1:19-2. Its function is to interpret these rules and to provide appropriate guidelines regarding the conduct of attorneys. Its published opinions are made binding

upon county ethics committees in their disposition of all matters. *R.* 1:19–6.

Opinion No. 291, in answer to an inquiry made to the Advisory Committee, concludes that a member of the board of chosen freeholders who is an attorney, may not ethically represent a criminal defendant indicted for a crime in the county in which the freeholder-attorney holds office. The full opinion is as follows:

*"Conflict of Interests*
*Freeholder Representing Criminal Defendant*
The question presented by this inquiry is whether an attorney who is a member of the board of chosen freeholders may represent a criminal defendant indicted for a crime in the county where such attorney holds office.

Although this Committee's jurisdiction does not extend to the conduct of a public official as such, a public official who is also an attorney is nevertheless subject to the ethical standards of his profession, even though there is no attorney-client relationship involved in the public office. *In re Genser*, 15 *N. J.* 600, 606 (1954) ; *Opinion* 70, 88 *N. J. L. J.* 161 (1965). Where the public interest is involved, every situation which affords even the slightest chance for impropriety should, if possible, be avoided, to eliminate public suspicion that an attorney in public office is using his position or influence on behalf of a client. *Opinion* 88, 89 *N. J. L. J.* 49 (1966). If we are to maintain public confidence in our system of government and the legal profession, attorneys who serve as public officials must avoid not only direct conflicts of interests, but also any situation which might appear to involve a conflict of interest. American Bar Association, Committee on Professional Ethics, *Opinion* 49 (1931).

This Committee has on numerous occasions discussed the limitations on the practice of municipal attorneys, county attorneys, or attorneys to appointed municipal or county boards or bodies. Such officials serve as legal representatives of the general public, and their appearance on behalf of private clients before other public officials of the same county or municipality would inevitably give rise to the suspicion that, by virtue of being members of the same official family, they can assert influence on behalf of their clients beyond that possessed by other members of the bar. *Opinion* 106, 90 *N. J. L. J.* 497 (1967).

Thus, a county attorney may not represent a criminal defendant indicted or tried in that county, nor may he represent a private party before a municipal court in the county, the county tax board, or any other agency of the county. *Opinion* 106, *supra.* Similarly, the attorney for a county planning board may not represent persons accused of crime within that county. *Opinion* 168, 93 *N. J. L. J.* 7

(1970). A county attorney, or any member or associate of his firm, may not appear in any municipal court in the county to represent a defendant charged with a nonindictable offense, *Opinion* 268, 96 *N. J. L. J.* 1325 (1973), and the county attorney or his assistant may not even appear on behalf of a county employee charged with a criminal offense in a situation where the county is legally obligated to provide the employee with an attorney. *Opinion* 272, 96 *N. J. L. J.* 1373 (1973).

The restrictions applicable to a county attorney apply with even more force to a member of the board of chosen freeholders. In *Opinion* 202, 94 *N. J. L. J.* 309 (1971), we held that a firm which sublets space to another attorney, who is a member of the county board of chosen freeholders, could not appear before the county board of taxation. As we stated there, it is clear that what is prohibited for a county attorney is also prohibited for an attorney who serves as a member of the board of chosen freeholders.

We recognize that the county prosecutor is appointed by the governor, and that to a large extent he is independent of the board of chosen freeholders. Nevertheless, the expenses of the prosecutor's office are paid by the county treasurer, after approval by the board of chosen freeholders. *N. J. S.* 2A:158–7. There is therefore a danger that members of the prosecutor's staff might be inclined to give a freeholder-attorney special consideration because of his position, but even more important than this possibility is the inherent appearance of conflict which this situation inevitably presents.

We therefore conclude that a member of the board of chosen freeholders may not ethically represent a criminal defendant indicted for a crime in the county in which the freeholder-attorney holds office."

*Opinion* No. 291, 97 *N. J. L. J.* 801 (1974).

The foregoing opinion was handed down on October 17, 1974. Shortly thereafter, suit was filed in the Superior Court, Chancery Division, Camden County, by plaintiffs who are freeholders (an office associate of one of the freeholders also joined as a party plaintiff) seeking a declaratory judgment as to the validity and scope of the Opinion as well as injunctive relief. After the substitution of certain parties plaintiffs was allowed, the trial court denied a motion to dismiss the complaint rejecting defendants' contentions (1) that the complaint failed to state a cause of action and (2) that injunctive relief was not appropriate.

The Appellate Division granted defendants' motion for leave to appeal the above ruling and, while the matter was

pending unheard in the Appellate Division, this Court ordered direct certification of both the appeal and the pending Chancery suit so that the entire matter is now before this Court.

We recognize the procedural problem faced by plaintiffs. As heretofore noted, an opinion of the Advisory Committee on Professional Ethics, while it does not bear the approval of this Court except in special circumstances (see *R.* 1:19–5), is binding upon Ethics Committees in their disposition of all matters. An attorney who fails to follow an Advisory Commitee opinion does so at his peril. Yet, there has been no recognized procedure for judicial review of the validity of such an opinion.

We have taken steps to eliminate the aforesaid problem. Contemporaneously with the filing of this opinion, we are adopting Rule 1:19–8 which establishes a procedure for review by this Court of an opinion issued by the Advisory Committee. Under the rule, any proper person in interest, on notice, may petition this Court for review of an Advisory Committee opinion. If review is granted, the matter proceeds as set forth in the rule.

We are not here presented with a disciplinary proceeding brought against a freeholder-attorney who, prior to any ruling that such conduct was improper, had in good faith and without exploiting his official position, represented a defendant indicted in the county in which the attorney held office. In such circumstance it would be unfair to discipline the attorney without some prior warning that this conduct created the appearance or risk of impropriety and was unethical.

What we have is an Advisory Committee opinion which seeks to avoid possible disciplinary proceedings against attorneys who are freeholders by delineating in advance a specific area of the law in which the attorney may not practice because it would create the appearance or risk of impropriety. We now consider the validity of the opinion.

A freeholder is a member of the governing body of a county. A board of freeholders exercises considerable statutory control over many functions of the prosecutor's office.[1] This potential for undue influence, where a freeholder who is an attorney practices criminal law in the same county, forms the underpinnings of the Advisory Committee opinion which noted that the expenses of the prosecutor's office are paid by the county treasurer after approval by the board of freeholders, and added:

"There is therefore a danger that members of the prosecutor's staff might be inclined to give a freeholder-attorney special consideration because of his position * * *."

97 *N. J. L. J.* 801, *supra,* slip op. p. 3.

This risk, insofar as it is bottomed on a board of freeholders' authority over financial expenditures by the prosecutor's office, has been somewhat diluted by this Court's decisions in *In re Application of Bigley,* 55 *N. J.* 53 (1969) and *In re Application of Schragger,* 58 *N. J.* 274 (1971). These cases hold that an assignment judge has broad statutory power to authorize expenditures for a prosecutor and could require the board of freeholders to meet the needs of the prosecution not provided for by the board in its regular or emergency appropriations for the prosecutor's office. However, despite this, it is apparent that a freeholder is an influential person with the prosecutor's office and his appearance in indictable criminal matters in the county in which he serves as freeholder can create not only the appearance of impropriety but also a real danger or risk of undue influence.

Plaintiffs argue that the "appearance" — test is vague, subjective and demeaning to the bar except "where there is a factually-based 'appearance' of a violation of a canon or

---

[1] See, for example, *N. J. S. A.* 2A:158–7; *N. J. S. A.* 2A:158–10; *N. J. S. A.* 2A:158–15; *N. J. S. A* 2A:158–15.2; *N. J. S. A.* 2A:158–16; *N. J. S. A.* 2A:158–18.2.

a disciplinary rule." We agree that the "appearance" of impropriety must be something more than a fanciful possibility. It must have some reasonable basis. However, where as here, a reasonable basis is shown to exist, "appearance" alone may be sufficient to present an ethical problem even though no actual impropriety exists. See DR9–101. In *State v. Rizzo,* 69 *N. J.* 28, 30 (1975) we said:

"\* \* \* However, a lawyer must avoid even the appearance of impropriety, DR9–101, to the end that the image of disinterested justice is not impoverished or tainted. Thus it is that sometimes an attorney, guiltless in any actual sense, nevertheless is required to stand aside for the sake of public confidence in the probity of the administration of justice."

To the same effect we held in *State v. Galati,* 64 *N. J.* 572, 576 (1974):

"Thus we must notice that in matters of ethics and professional probity, the cause and effect impact upon the public consciousness is almost, perhaps quite, as important as the actual fact. *Cf.* Disciplinary Rule 9–101, exhorting the lawyer to avoid 'even the appearance of impropriety.' So also, in *In re Spitalnick,* 63 *N. J.* 429, 431, 432 (1973), in upholding 'the fundamental principle of disinterested justice which is the bulwark of our judicial system,' our Court asserted that 'a community without certainty in the true administration of justice is a community without justice.'"

Moreover, we are satisfied that in addition to the appearance of impropriety, there is present the real danger or risk of undue influence.

An attorney who represents a defendant under criminal indictment in the same county in which the attorney serves as freeholder, and who, as part of such representation, negotiates with the prosecutor's office with regard to downgrading a criminal charge, plea or sentence appears to stand to receive more favorable consideration for the client because of the attorney's official position. This is what the opinion seeks to prevent.

DR8–101(A)(1) prohibits an attorney who holds public office from using his public position to obtain an improper

advantage for himself or for a client. This rule when read in conjunction with DR9–101, which admonishes attorneys generally to avoid even the appearance of impropriety, forms a solid basis for the Advisory Committee opinion.

Plaintiffs also contend that Advisory Opinion No. 291 singles out freeholders who are attorneys for special restrictions in their legal practice and thus denies them equal protection. It is to be noted that the inquiry made of the Advisory Committee was as to freeholder-attorneys only, and the opinion merely answers the inquiry. Aside from that, however, the principles of "apparent" impropriety and conflict of interest would apply to an attorney who occupies any public office. Advisory Committee opinions uniformly hold that such an attorney must refrain from practicing law in an area within the ambit of his public office. For example, see *Advisory Opinions Nos.* 272 (1973), 268 (1973), 202 (1971), 168 (1970), 106 (1967).[2]

Plaintiffs make the further contention that the scope of Opinion No. 291 is so broad that, as a practical matter, it bars an attorney-freeholder from almost any kind of legal activity in the county in which he serves as freeholder. We do not agree that the opinion has the breadth that plaintiffs would give to it. The opinion is in answer to the specific inquiry whether an attorney who is a member of the board of chosen freeholders may represent a criminal defendant indicted for a crime in the county in which the freeholder-attorney holds office. The opinion concludes that it would be unethical for an attorney-freeholder to represent such a defendant. This is all that the opinion holds and is the only binding part thereof.

---

[2]Advisory Opinion No. 294 is not to the contrary. It is concerned with the activities of attorneys who were former officials and concludes that present ethical standards established by interpretation of the Canons of Professional Ethics and the Code of Professional Responsibility were adequate to discipline an attorney charged with unethical use of his former public position.

True, the opinion contains references to other county officials and to prior Advisory Opinions which set forth restrictions and limitations on such officials' activities as attorneys. The Advisory Committee in its opinion indicates that the same restrictions and limitations would apply to an attorney-freeholder. However, no inquiry has been made of the Advisory Committee as to these additional activities insofar as attorney-freeholders are concerned, nor has the Advisory Committee been furnished with "the factual situation in detail." See *R.* 1:19–3. We therefore conclude that reference in Opinion No. 291 to restrictions and limitations on the practice of law by an attorney-freeholder beyond that contained in the inquiry presented to the Advisory Committee is not part of the holding of the opinion. So construed, we uphold the legality and correctness of Opinion No. 291 of the Advisory Committee on Professional Ethics.

*Amicus curiae,* New Jersey Association of Chosen Freeholders, argues in its brief that Opinion No. 291 does not conform to standards governing the executive and legislative branches of the state government under the New Jersey Conflicts of Interest Law, *N. J. S. A.* 52:13D–12, and is therefore arbitrary and unreasonable. We do not agree. We do not regard that law as applicable to ethical constraints on attorneys subject to the disciplinary rules promulgated by this Court. But even assuming the relevancy of the law, there is nothing in the Advisory Committee opinion which is inconsistent with it. Indeed, the two require basically similar standards of conduct.

*Amicus* also argues that, instead of prohibiting an attorney-freeholder from representing a criminal defendant indicted for a crime in the county where such attorney holds office, Opinion No. 291 should have given recognition to the doctrine of abstention whereby the freeholder-attorney could avoid any possible conflict of interest by abstaining from voting on matters affecting the county prosecutor's office and the judges in the county. This suggestion, however, would not eliminate the problem of "appearance" of impropriety.

Moreover, it would result in a situation where freeholders who are attorneys would not be attending to a substantial part of their sworn duties.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and Judge CONFORD.—7.