626 A.2d 1084

IN RE OPINION 662 OF THE ADVISORY COMMITTEE
ON PROFESSIONAL ETHICS.

Argued March 16, 1993—Decided July 8, 1993.

*Edwin W. Schmierer* and *Randolph C. Lafferty* argued the cause for appellants John E. Coley, Jr., Esquire; William T. Cooper, III, Esquire; Nicholas J. Costa, Esquire; Randolph C. Lafferty, Esquire; Edwin W. Schmierer, Esquire (*Kunzman, Coley, Yospin & Bernstein, William T. Cooper, III, pro se, Costa and Vetra, Megargee, Youngblood, Franklin & Corcoran,* and *Mason, Griffin & Pierson,* attorneys; *Mr. Schmierer,* of counsel; *Robin Hauer,* on the brief).

*Duane O. Davison* argued the cause for appellant Donald S. Driggers, Esquire (*Lomurro, Davison, Eastman & Munoz,* attorneys).

*Stuart D. Boyd* argued the cause for appellant Stuart D. Boyd *pro se.*

*John A. Almeida* argued the cause for appellants Zane & Lozuke, P.C.; Waters & Sherman, P.A.; Rosenberg & Rosenberg, P.A.; Scangarella & Feeney, P.A.; Valentino, Dunne & Stein, P.A.; Kummer, Knox & Naughton, P.A.; Almeida & Hunt, P.A.; and Michael J. McKenna, Esquire (*Almeida & Hunt,* attorneys; *Mr. Almeida, Richard W. Hunt,* and *Peter C. Lange, Jr.,* on the brief).

*Joseph L. Yannotti,* Assistant Attorney General, argued the cause for respondent, Advisory Committee on Professional Ethics (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*Annemarie Williams* submitted a brief on behalf of appellant Gilmore & Monahan, P.A. (*Gilmore & Monahan,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

█ The question in this case is whether an attorney, or an attorney and associate (by "associate" we mean partner, associate, or one sharing offices) may simultaneously serve as municipal attorney and as municipal prosecutor in the same municipality. The Advisory Committee on Professional Ethics (ACPE or Committee) determined that neither an attorney nor an attorney and associate may hold both positions. The Committee reasoned that the public would believe that the municipal prosecutor might fail to bring independent judgment to prosecution under ordinances that the attorney or associate had drafted or in matters on which the attorney or associate had advised the municipal body. The petitioners are individual attorneys or attorneys and associates who hold the office of municipal attorney and prosecutor for several municipalities, including the Boroughs of Allentown, Peapack, Gladstone, and Seaside Heights. The petitioners requested review of the opinion under *Rule* 1:19-8. The Committee stayed its opinion pending our decision. We now hold that an attorney, or the attorney's associate, may serve as municipal attorney and municipal prosecutor of the same municipality. Attorneys or firms whose members choose to hold both positions should be aware of any appearance of impropriety and recuse themselves on a case-specific basis when warranted.

I

In *Opinion 516,* 111 *N.J.L.J.* 481 (1983), the ACPE "noted the high percentage of inquiries to this Committee that arose out of relationships between lawyers and governmental agencies in which a lawyer or his office associates occupied positions." It wrote: "We have now published well over 500 opinions and the percent-

age of inquiries relating to the aforesaid subject matter has not appreciably declined." *Ibid.* The Committee suggested that a "reference to a standard relating to the avoidance of an appearance of wrongdoing might resolve most of these inquiries." *Ibid.*

The standard is indeed very workable. Of the hundreds of opinions rendered by the Committee on this subject, we have reviewed but a few. In its first-published opinion, *Opinion 4*, 86 *N.J.L.J.* 357 (1963),[1] the ACPE established the appearance-of-impropriety standard that it has used to evaluate conflicts of interest in multiple representation of municipal agencies and private clients. (The gender references reflect only the circumstances of the time.) *Opinion 4* held that a municipal attorney could not represent private clients before the zoning board of adjustment of the municipality because

> [i]n a broad sense an attorney representing a municipality or any of its agencies has as his "client" the entire municipality, and he should avoid any retainers from others which may place him in a position where he appears to be either seeking relief or favor from the municipality or any of its agencies for a private client or to oppose action by the municipality or its agencies on behalf of a private client. If he did so, it would be inevitable that, if he were successful, the losing litigant, or the public in general, would be troubled by suspicion that his success in the matter was attributable to improprieties and that his position or influence as a municipal attorney might have furthered the cause of the private client. [*Ibid.*]

*Opinion 5*, 86 *N.J.L.J.* 361 (1963), filed the same day, held that an attorney who serves as municipal prosecutor is actually serving as an attorney for the municipality and should equally be prohibited from appearing before the zoning board of adjustment or other local agencies. In refining that standard the Committee explained that "[a]n attorney should not only avoid all impropriety, but should likewise avoid the appearance of impropriety." *Opinion 8*, 86 *N.J.L.J.* 718 (1963).

The Committee has repeated that theme continuously in its various applications. See, *e.g., Opinion 53*, 87 *N.J.L.J.* 610 (1964) (holding that part-time municipal prosecutor could not represent

---

[1] *Opinion 1*, 86 *N.J.L.J.* 713 (1963), *Opinion 2*, 86 *N.J.L.J.* 718 (1963), and *Opinion 3*, 86 *N.J.L.J.* 718 (1963), were actually published after *Opinion 4*.

client's appeal from that court); *Opinion 11,* 86 *N.J.L.J.* 718 (1963) (holding that attorney who is municipal clerk may not represent defendants in municipal court). In each such case, "The real problem lies in the fact that the [attorney] is part of the official family of the municipality." *Opinion 322,* 99 *N.J.L.J.* 126 (1976). When such an attorney proposes to represent an interest adverse to the municipality's, the public may reasonably infer that the attorney's status as part of the official family gives the client an unwarranted advantage.

The ACPE has adopted the same general standard to identify conflicts in representing different agencies of the same municipality. In *Opinion 67,* 88 *N.J.L.J.* 81 (1964), the ACPE ruled that whether an attorney may represent various boards or agencies in the municipality, such as the planning board, zoning board, or health and education boards, depends on whether "there is or may be a conflict of interest in a particular situation." It has applied that doctrine on a case-by-case basis. Thus, in view of the autonomous character of the board of education, *Opinion 44,* 87 *N.J.L.J.* 297 (1964), held that if one member of the law firm were a council member in a municipality, another member of the law firm could serve as attorney for the board of education if the board of education were an elected body that selected its own employees without any consent or approval of the municipal council. The Committee expressed a note of caution that conflicts may arise requiring both attorneys to disqualify themselves such as in the transfer of municipal lands to the board of education. The autonomous character of the municipal agency was also important in *Opinion 39,* 87 *N.J.L.J.* 191 (1964), which held that a municipal attorney could properly represent the local board of education except in matters related to the municipality itself. *See also Opinion 300,* 98 *N.J.L.J.* 126 (1975) (finding that relationship between attorney for local planning board and board of health is not one of inherent conflict); *Opinion 292,* 97 *N.J.L.J.* 809 (1974) (stating that because fire district is more autonomous body than adjunct of municipality, fire district attorney may appear in municipal court or before municipal agencies of municipality).

On the other hand, for an attorney to represent both the zoning board and the planning board is improper because of the interrelationship between their functions and the potential for conflict. *Opinion 127*, 91 *N.J.L.J.* 127 (1968). So too, a partner of a municipal attorney could not accept appointment as attorney for the municipal planning board, *Opinion 149*, 92 *N.J.L.J.* 185 (1969), and a municipal prosecutor may not hold the position of planning-board attorney in the same municipality, *Opinion 452*, 105 *N.J.L.J.* 353 (1980). The rationale of those opinions was well expressed in *Opinion 620*, 122 *N.J.L.J.* 1246 (1988): an attorney for the municipal planning board could not accept a position as counsel to the municipal utilities authority because the relationship between the municipal planning board and the municipal utilities authority required a "significant degree of interaction between agencies discharging two quite distinct sets of public responsibilities, and thus the traditional principles protecting the public interest would still appear to apply."

We have generally applied the same fact-sensitive analysis. In *In re Opinion 452*, 87 *N.J.* 45, 432 *A.*2d 829 (1981), we affirmed the decision of the ACPE that an inherent conflict of interest exists when a municipal attorney (in that case the municipal prosecutor) seeks to serve as well as the attorney for the municipal planning board, because of the potential for an appearance for impropriety arising from the conflicting nature of the representations.

## II

Whether a municipal prosecutor can also serve as the municipal attorney rests on an evaluation of the potential for the appearance of impropriety. "Where the potential for conflict is reasonably clear," *Opinion 300, supra*, 98 *N.J.L.J.* at 126, or a "significant degree of interaction" exists between the two agencies, *Opinion 620, supra*, 122 *N.J.L.J.* at 1246, an absolute bar against holding both positions would be warranted. New Jersey Rule of Professional Conduct 1.7(c)(2) states that

in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

We have recently reviewed when the representation of multiple bodies of the same governmental entity by the same attorney or firm creates an appearance of impropriety. See *In re Opinion 653*, 132 *N.J.* 124, 623 *A.*2d 241 (1993). We concluded that our case law reveals a detailed and fact-specific examination of each instance, evaluating the frequency of antagonistic relations and whether an appearance of impropriety has some reasonable basis. *Ibid.* We emphasized, as we have emphasized before, that the appearance of impropriety must be " 'more than a fanciful possibility.' " *Perillo v. Advisory Comm. on Professional Ethics*, 83 *N.J.* 366, 376, 416 *A.*2d 801 (1980) (quoting *Higgins v. Advisory Comm. on Professional Ethics*, 73 *N.J.* 123, 129, 373 *A.*2d 372 (1977)).

Although in *In re Opinion 452, supra*, 87 *N.J.* 45, 432 *A.*2d 829, we adopted a *per se* ban on dual service as municipal prosecutor and planning-board attorney, we do not believe that the situation before us presents the same degree of conflict. To begin with, that a municipal prosecutor is in fact a municipal attorney has long been recognized. To find a conflict when the two are one seems anomalous. "[A]n attorney, representing a municipality in such a capacity as municipal prosecutor[ ] has as his client the entire municipality." *Opinion 53*, 87 *N.J.L.J.* 610 (1964); *see also Opinion 452, supra*, 105 *N.J.L.J.* 353 ("Clearly, a municipal prosecutor is a municipal attorney."). The only difference is that "the municipal prosecutor does not deal with the broad spectrum of legal matters," which the municipal attorney does. *Opinion 501*, 110 *N.J.L.J.* 342 (1982). "The role of the municipal prosecutor ordinarily is limited to the prosecution of individuals charged with disorderly persons offenses and motor vehicle violations in municipal court." *Ibid.* Hence we do not perceive as realistic the likelihood that it will often occur that the two bodies may "entertain[ ] conflicting points of view." *Opinion 67, supra*, 88 *N.J.L.J.* 81.

That perception is bolstered by the *Rules Governing the Courts of the State of New Jersey* and New Jersey law. *Rule* 7:4–4(b), *Rule* 3:23–9, and several statutes allow a municipal attorney to prosecute a violation of a municipal ordinance and argue the case on appeal. See *N.J.S.A.* 51:9–11 and *N.J.S.A.* 39:5–20 (describing municipal attorneys acting as prosecutors). Those provisions have prompted the rhetorical question: "Would it be a conflict of interest for the municipal attorney to prosecute a matter in the municipal court?"

According to petitioners the vast majority of cases in municipal courts involve violations of state statutes, typically motor-vehicle and minor drug offenses, and not violations of municipal ordinances. One petitioner, who has served as municipal prosecutor for over four and one-half years, asserts that in that time fewer than two dozen trials involved municipal-ordinance violations or other non-statutory offenses. "Of these, the majority are for citizen complaints which customarily proceed without a prosecutor in all instances, and the balance are typically relatively minor matters such as loose dogs, trespassing and parking violations." Another petitioner, with five years in both positions, asserts that he has never prosecuted a complaint alleging a violation of an ordinance he has helped draft. A third petitioner, with long experience in both positions, informs us that ninety-nine percent of his time as municipal prosecutor is spent prosecuting violations of state statutes and one percent of his time on municipal ordinance violations. The potential for an appearance of impropriety is very low. Were we to doubt the reliability of the data, we would remand the matter for a factual record, but our experience confirms those assertions about the prosecutorial function in municipal courts.

The ACPE is concerned that no person serve as both municipal attorney and municipal prosecutor when the potential exists that the prosecutor might not exercise discretion unaffected by external considerations. We agree that a prosecutor exercises broad discretion and should exercise independent judgment to see that justice is done. A municipal attorney who gives advice to the

governing body concerning ordinances may later be asked to enforce those same ordinances in an independent manner unaffected by any relationship with the governing board or any advice he or she may have provided the board. The Committee believes that the public could reasonably question an attorney's ability to do that.[2] Only a small part of a municipal prosecutor's job involves the enforcement of municipal ordinances, and of the cases involving ordinances only a fraction may involve those in which the attorney had a substantive role in an ordinance's adoption.

We agree that hiring special counsel is a poor substitute if disqualification were often to occur. Thus, in *In re Opinion 452, supra,* 87 *N.J.* 45, 432 *A.2d* 829, although special counsel could be hired for the small number of municipal-court cases involving the planning board, we held that one firm could not hold both positions. We adopted that *per se* ban because a significant degree of interaction routinely occurs between the bodies, and we viewed the municipal prosecutor as the equivalent of the municipal attorney. Under the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D-1 to -136, the board of adjustment, planning board, and governing body share power, but certain decisions of the planning board can be appealed to the governing body. One body is subordinate to the other in such matters. The MLUL recognizes the distinct functions of each body and authorizes the planning board to "employ, or contract for, and fix the compensation of legal counsel, other than the municipal attorney." *N.J.S.A.* 40:55D-24. The municipal prosecutor and municipal attorney, on the other hand,

---

[2] We are not so certain that this involvement in the drafting process should always disqualify an attorney from an enforcement proceeding. A mundane example would be the change of a parking ordinance from one that permitted parking for one hour to one-half hour. Other examples come to mind as when the Attorney General presents a crime-prevention program to the Legislature; are the Attorney General's deputies precluded from enforcing the law? The same situation arises at the federal level. *See* Federal Debt Collection Procedure Act of 1990, 28 *U.S.C.* § 3001 to 3308; *Federal Debt Collection Procedures: Hearing Before Subcomm. on Economic and Commercial Law of the Senate Comm. on Judiciary,* 101st Cong., 2nd Sess. (1990) (discussing drafting, testimony, and endorsement of bill by ninety-three United States Attorneys).

are more like equals. Both are hired by the municipal body and represent the municipality. No subordinate relationship exists as in the relationship in *In re Opinion 452*. Were we to sense that same degree of dependent interaction here, we would insist on the same *per se* ban of dual representation.

In *In re Petition for Review of Opinion 552*, 102 *N.J.* 194, 507 *A.*2d 233 (1986), we emphasized that conflict of interests problems involving the representation of multiple public clients or interests are "myriad and complex," *id.* at 202, 507 *A.*2d 233, and that the appropriate rule "grounded upon common sense, experience, and realism * * * [is] that the joint representation of clients with potentially differing interests is permissible provided there is a substantial identity of interests between them * * * [and] [t]he elements of mutuality must preponderate over the elements of incompatibility." *Id.* at 204, 507 *A.*2d 233. We adopted that individualized approach because of "the difficulties encountered in applying *per se* rules to varied ethical questions in the public sector," *id.* at 205–06, 507 *A.*2d 233, the danger of ethical problems developing was low, and the "severe financial strains the *per se* rule imposes on local governments and those individual employees who are forced to obtain independent counsel." *Id.* at 206, 507 *A.*2d 233. When "the likelihood of an actual conflict of interests is remote and poses no realistic threat to the effective representation of such multiple defendants, an attorney should not be prohibited from representing both parties." *Id.* at 208, 507 *A.*2d 233; *see also In re Opinion 621*, 128 *N.J.* 577, 602, 608 *A.*2d 880 (1992) (rejecting *per se* rule and adopting case-by-case approach with respect to legislative aides representing private interests, stressing "the circumstances of the situation" and "a combination of factors of enormous variety").

### III

To sum up, the vast majority of a municipal prosecutor's work does not involve municipal ordinances. Even when a municipal ordinance is involved, the municipal prosecutor or associate often

will not have drafted or advised the municipal body on the ordinance, or the attorney's involvement may have been ministerial (as in changing hours for parking). If a potential for an appearance of impropriety arises or may arise from the attorney's or the attorney's and associate's involvement in the legislative and prosecutorial function, the municipal prosecutor should withdraw.

Given the remote potential for such an appearance of impropriety and the fact that the majority of the prosecutor's work is enforcement of motor-vehicle and disorderly-persons laws, we conclude that a *per se* rule of disqualification is not required.

CLIFFORD, J., concurring.

The Court's otherwise-impeccable opinion relegates to footnote status an important observation. Sounding an entirely appropriate note of caution, the Court expresses doubt about the proposition, floated by the Advisory Committee on Professional Ethics, that a government attorney's involvement in the drafting of an ordinance or statute or crime-prevention program will *always* disqualify that attorney from participating in a proceeding for the enforcement thereof. *Ante* at 29–30, 626 *A.*2d at 1088 & n. 2. I share the Court's doubt, but I deplore the use of a footnote to express it.

In fact, I deplore resort to footnotes not only in this case in particular but in judicial opinions generally. They distract. They cause the reader to drop the eyes; to absorb what is usually a monumental piece of irrelevancy or pseudo-scholarship but is sometimes—as here—a significant pronouncement that rightly belongs in the text; and then to return, without skipping a beat, to the point of departure on the upper part of the page. The whole irritating process points up the soundness of John Barrymore's observation that "[reading footnotes is] like having to run downstairs to answer the doorbell during the first night of the honeymoon," *quoted in* Norrie Epstein, *The Friendly Shakespeare* 75 (1992).

And so the footnote in the Court's opinion represents yet another setback in my woefully-ineffectual campaign to abolish

footnotes from our opinions. Of course, an exception to that hard-and-fast rule crops up occasionally, as illustrated by footnote 1 of Judge Kozinski's recent opinion for the Ninth Circuit in *United States v. Snider*, 976 *F.*2d 1249, 1250 (1992), which reads as follows:

1 We do not (except in the caption) follow the appellant's counsel's interesting practice of writing the names of the people involved in CAPITAL LETTERS. Neither do we follow the appellee's counsel's practice of writing appellant's name in **BOLD-FACED CAPITAL LETTERS.** Nor do we intend to write all numbers both as text and numerals, as in "eleven (11) loose teeth, two (2) of which were shattered[;] [m]oreover, her jaw was broken in three (3) places." Appellee's Brief at 7. Finally, we will also not

"set off important text"

by putting it on

"separate lines"

and enclosing it in

"quotation marks."

*See id.* at 10. While we realize counsel had only our welfare in mind in engaging in these creative practices, we assure them that we would have paid no less attention to their briefs had they been more conventionally written.

Subject to the foregoing observations I join the Court's opinion.

CLIFFORD, J., concurring in the result.

*For disapproval*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.