745 A.2d 497

IN RE ADVISORY COMMITTEE ON PROFESSIONAL
ETHICS, DOCKET NO. 18–98.

Argued September 13, 1999—Decided February 15, 2000.

*Gregory C. Hart,* argued the cause for appellant, pro se *(Hirsch, Cheron & Hart,* attorneys).

*Carol Johnson,* Deputy Attorney General, argued the cause for respondent, Advisory Committee on Professional Ethics *(John J. Farmer, Jr.,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Former Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

O'HERN, J.

The question in this case is whether an attorney may simultaneously serve as municipal attorney and as clerk-administrator for the same municipality. The Advisory Committee on Professional Ethics (Committee or ACPE) determined that an attorney may not hold both positions. The Committee concluded that such dual office-holding creates an actual conflict of interest and otherwise gives rise to an appearance of impropriety. The Committee

reasoned that the municipal attorney might fail to bring independent judgment to evaluation of the conduct in office of the clerk-administrator. We granted petitioner's request, 157 *N.J.* 643, 725 *A*.2d 1124 (1999), to review the opinion under *R.* 1:19–8. We agree with the ACPE that an attorney may not simultaneously hold the positions of municipal attorney and clerk-administrator under the circumstances outlined in this petition, although we confine our reasoning to the finding of an impermissible potential conflict of interest.

I

Petitioner had served the Borough of Old Tappan as its borough attorney for ten years when the Mayor and Council expressed an intention to appoint him to the position of clerk-administrator. Petitioner sought an advisory opinion from the Committee to determine whether he could hold both positions. In response to petitioner's inquiry, the Committee ruled

that an attorney called upon to serve as both municipal solicitor and municipal administrator would be unable to provide the full panoply of legal services expected of him without such service being affected by the lawyer's own interests, a conflict of interest to which the municipality cannot consent, or otherwise causing an ordinary knowledgeable citizen acquainted with the facts to conclude that multiple service poses a substantial risk of disservice to the public interest.

The Committee cited *R.P.C.* 1.7, which states in pertinent part:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

(c) This rule shall not alter the effect of case law or ethics opinions to the effect that:

(1) in certain cases or categories of cases involving conflicts or apparent conflicts, consent to continued representation is immaterial, and

(2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

Petitioner has furnished us with copies of the relevant Borough ordinances. The duties of the borough clerk are described as follows:

[t]he borough clerk shall serve as clerk of the council, ... attend all meetings of the council and keep the minutes of the proceedings of the council. The minutes of each meeting of the council shall be signed by the officer presiding at the meeting and by the clerk.... The clerk shall record all ordinances in books to be provided for that purpose.... The clerk shall have custody of and safely keep all records, books and documents of the borough.... The clerk shall maintain a record of all real property which the borough may acquire, sell, or lease.... The clerk shall cause the corporate seal of the borough to be affixed to instruments and writings when authorized by ordinance or resolution of the council or when necessary to exemplify any document on record in his office.... The clerk shall be the repository for and custodian of all official surety bonds furnished by or on account of any officer or employee, ... perform all the functions required of municipal clerks by the General Election Law, [and] ... [a]dminister the provisions of borough ordinances with reference to the licensing of occupations and activities....

[*Old Tappan, N.J., Rev. Ordinances* § 2–6.1 to –6.8 (1975).]

The ordinance describes the responsibilities of the borough administrator as follows:

[the] borough administrator ... shall ... provide a liaison between the governing body and the various departments, bodies and other officials of the Borough of Old Tappan under the supervision and control of the mayor and council and to fulfill such other duties as shall be specifically assigned by the said mayor and council from time to time.... The duties of the borough administrator ... shall not infringe upon the duties, rights and powers of other borough officers designated by statute or by borough ordinance.... The office of the borough administrator shall be held by the same person who holds the title of the borough clerk.

[*Id.* at §§ 2–29.1., 2–29.4 (May 1997).]

Finally, the Old Tappan ordinance entitled "Borough Attorney" includes the following:

The borough attorney shall be appointed by the mayor with the advice and consent of the council for a term of one year.... The attorney shall not receive a fixed salary [1], but shall be paid such retainer as may be agreed upon and authorized by

---

[1] The attorney acknowledged that if the arrangement contemplated would be a fee for services arrangement, there would be a conflict; however, he assured the

the council, plus such fees and charges as shall be deemed reasonable.... The attorney shall have such powers and perform such duties as are provided for the office of borough attorney by general law or ordinances of the borough. [The attorney] shall represent the borough in all judicial and administrative proceedings in which the municipality or any of its officers or agencies may be a party or have an interest. [The attorney] shall give all legal counsel and advice where required by the mayor and council or any member thereof, and shall in general serve as the legal advisor to the mayor and council on all matters of borough business....

[*Id.* at §§ 2–13.1, –13.2 (July 1978).]

The ordinance also describes the specific duties of the borough attorney that include drafting all legal documents, conducting appeals, entering into agreements, compromises or settlements on behalf of the borough, and rendering any opinions submitted by the mayor or council.

The Legislature has provided that a municipal council may appoint "a municipal manager, an assessor, an auditor, a treasurer, a clerk, and an attorney. One person may be appointed to *two or more such offices,* except that the offices of municipal manager and auditor or assessor shall not be held by the same person." *N.J.S.A.* 40:81–11 (emphasis added). Because the Legislature has expressly held the two offices to be compatible, we do not rely on the "appearance of impropriety" doctrine to disqualify petitioner on those grounds. After all, the test is whether "an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients." *R.P.C.* 1.7(c). Surely, the members of the Legislature are better informed than "an ordinary knowledgeable citizen," yet they did not perceive a potential for conflict.

We agree also that the offices are not incompatible. In *Reilly v. Ozzard,* Chief Justice Weintraub stated the test: "Incompatibility is usually understood to mean a conflict or inconsistency in the functions of the office. It is found where in the established governmental scheme one office is subordinate to another, or

Court that the ordinance would be amended to clarify that the attorney's fee would be a flat fee.

subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation over another." 33 *N.J.* 529, 543, 166 *A*.2d 360 (1960)(holding that the common law did not prohibit a state senator from holding the position of municipal attorney); *see also, Schear v. Elizabeth,* 41 *N.J.* 321, 196 *A*.2d 774 (1964) (holding that municipal attorney could be a member of the planning board). Although the duties of borough attorney and clerk-administrator do not intrinsically clash, we must analyze this dual office-holding under "[t]he New Jersey disciplinary system [that] is [ ] designed to protect the public and 'the integrity of the profession.'" *Baxt v. Liloia,* 155 *N.J.* 190, 202, 714 *A*.2d 271 (1998).

## II

Although *N.J.S.A.* 40:81–11 expressly allows the appointment of one person to the positions of attorney and clerk or manager, that is not the end of the inquiry. Resolution of the ethical propriety of an attorney's conduct "is within the exclusive province of the Supreme Court." *Pickett v. Harris,* 219 *N.J.Super.* 253, 260, 530 *A*.2d 319 (App.Div.1987). "[I]t is safe to say that generally, almost without exception, no branch of government has the power to authorize, either explicitly or implicitly, conduct by attorneys that violates the ethical standards imposed by the judiciary." *In re Opinion No. 621 of the Advis. Comm. on Prof'l Ethics,* 128 *N.J.* 577, 590, 608 *A*.2d 880 (1992). Although such judicial power may interfere with governing a municipality, "[n]either the Legislature nor the Executive has any power to overrule attorney ethical standards promulgated by this Court." *Id.* at 591, 608 *A*.2d 880 (citing *In re Genser,* 15 *N.J.* 600, 607, 105 *A*.2d 829 (1954)). For example, this Court has held that "[a]n attorney, his partner or associate may not be counsel to a municipality and to the county in which it is located" because of the regular interaction between the two governmental entities. *In re Opinion No. 415 of the Advis. Comm. on Prof'l Ethics,* 81 *N.J.* 318, 327, 407 *A*.2d 1197 (1979).

We must therefore consider whether the holding of the two offices would pose an impermissible conflict of interest under *R.P.C.* 1.7(b). We find such an impermissible conflict because we believe that the position of municipal administrator, as contemplated by the inquiry, is akin to that of a chief daily operating officer of the municipality.[2] At one time there was no need for such an office of local government. Municipalities could gather once or twice a month to conduct public business. Part-time public officials, a clerk, a tax collector, a treasurer could attend to the daily operations of the municipality.

Local government has grown more complex, with increasing demands for cost efficiency on the one hand and for more sophisticated governmental services such as environmental or emergency management on the other. Many municipalities have entrusted the day to day conduct of their affairs to full-time municipal administrators. By a 1989 amendment to *N.J.S.A.* 40A:9–136, the Legislature authorized the delegation of partial or total executive responsibility to an administrator. *See also*, 34 *New Jersey Practice, Local Government Law* § 109 (Michael A. Pane) (2d ed.1993). Depending on the terms of the enabling ordinance, we would expect an administrator to arrange for the purchase of materials, supplies and equipment, to administer contracts necessary for the operation and maintenance of city services, to ensure the efficient use of all property owned by the city, to take care that all franchises are faithfully observed, to recommend such measures as are necessary for the health, safety or welfare of the community, to investigate, examine or inquire into the affairs or operation of any department, bureau, or office of the municipality, to interpret collective negotiation agreements and to give advice to boards, committees, agencies, departments or officials of the municipality.

---

[2] Although holding the positions of clerk and borough attorney might not impose an impermissible conflict of interest, the Old Tappan ordinance requires that the administrator be the same person as the clerk.

■ Such a person will from time to time have the need for legal counsel concerning the propriety of actions taken in these many diverse areas of responsibility. More importantly, the administrator may need legal advice on actions that he or she may have already taken. When the municipal attorney counsels the municipal administrator, he or she is really giving legal advice to the municipality itself.

■ The attorney's client is the municipal body as represented through its mayor, council and other officials. *In re Opinion No. 662 of the Advisory Comm. on Prof'l Ethics,* 133 *N.J.* 22, 25, 626 *A.*2d 1084 (1993). An attorney cannot reasonably be expected to give that body candid, objective advice concerning his own conduct as administrator.

■ We realize that in the private sector, the general counsel for a corporation may hold diverse executive responsibilities. A municipality, unlike a private corporation, cannot consent to a conflict of interest. *In re Opinion 415, supra,* 81 *N.J.* at 326, 407 *A.*2d 1197. The question thus is whether representation of the borough would be materially limited by the lawyer's own interests, specifically, the lawyer's own interests in vindicating his conduct as municipal administrator. We envision many circumstances in which the conduct of the administrator might be called into question and require legal counsel and advice, such as in employment decisions that might give rise to employment discrimination claims, in contract administration that might give rise to claims of preferential bidding, in licensing decisions that might give rise to claims of selective enforcement of ordinances. In all such circumstances, the borough administrator as chief operating officer of the municipality should have access to independent counsel and advice. The municipality is poorly served by an attorney whose personal interests are potentially in conflict with those of his client. *In re Opinion 662, supra,* 133 *N.J.* at 29–30, 626 *A.*2d 1084.

Petitioner suggests that such conflicts will rarely, if ever, arise and that if conflicts arise, outside counsel can be brought in to

advise the municipality and the administrator. We do not consider that to be a sound solution when there is a recurring potential for disqualification. *Id.* at 30, 626 *A.*2d 1084. It is only when "the possibility of litigation is so remote that should actual conflict arise, the appointment of special counsel would be an appropriate remedy." *In re Opinion No. 653 of the Advisory Comm. on Prof'l Ethics,* 132 *N.J.* 124, 135, 623 *A.*2d 241 (permitting two partners from the same firm to serve as county counsel and school board counsel). Here, however, actual conflict is far from remote. There is substantial likelihood that outside counsel would or should be frequently required. The use of special counsel "not only increases the cost of legal services to the public, but also deprives the public client of representation by the attorney first selected by it." *In re Opinion 415, supra,* 81 *N.J.* at 322, 407 *A.*2d 1197.

We respect the wishes of the Borough to engage for its day to day management an attorney in whom it has reposed great trust and confidence. Likewise, we respect the attorney who is certain that his integrity would assure an unfettered exercise of judgment in either capacity. Yet we must fashion a rule that will apply equally as well in more demanding circumstances, as in a fast-growing suburban community. It asks too much for an individual to be able to give objective advice to the municipality without being materially limited by the "lawyer's own interest" as the subject of the inquiry.

For these reasons, we hold that one attorney may not hold both the position of municipal attorney and clerk-administrator for the same municipality. As modified, the advisory opinion of the ACPE is affirmed.

STEIN, J., dissenting.

The Advisory Committee on Professional Ethics (Committee or ACPE), without a hearing, see *R.* 1:19–4, determined that an attorney may not serve simultaneously as municipal attorney and as clerk-administrator for the same municipality. The Court

affirms, but rejects the ACPE's conclusion that the simultaneous holding of those offices constitutes an appearance of impropriety. The Court observes, correctly I believe, that the appearance of impropriety doctrine should not bar petitioner from holding the offices in question because the Legislature expressly has determined that the offices are compatible. *Ante* at 501, 745 *A.*2d at 500.

The Court also correctly concludes that the offices are not incompatible under the common law, citing with approval, *ante* at 501–02, 745 *A.*2d at 500, Chief Justice Weintraub's test for common law incompatibility expressed in *Reilly v. Ozzard,* 33 *N.J.* 529, 543, 166 *A.*2d 360 (1960), as occurring only when "in the established government scheme one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation over another."

Nevertheless, the Court concludes that petitioner's "own interests in vindicating his conduct as municipal administrator" would materially limit his ability to represent the municipality. *Ante* at 504, 745 *A.*2d at 502. In other words, the Court is concerned with the hypothetical possibility that the municipal attorney might periodically be required to express an opinion on whether his own conduct as municipal administrator was in accordance with law, and that on such occasions the municipal attorney might not give objective advice out of fear of undermining his personal job security as administrator. Although the Court's concern is plausible, it overlooks the greater likelihood that the strong identity of interests between the positions of attorney and administrator, focused on serving the municipality's best interests, renders remote the likelihood that the petitioner as attorney would compromise his objectivity to protect his job as administrator. Moreover, the likelihood that petitioner would compartmentalize his skills, acting first as an administrator uninformed by his own legal experience, and later as an attorney to review the legality of his earlier action, seems to me to be insubstantial.

Our case law concerning both the appearance of impropriety doctrine and the impermissibility of attorney conflicts of interest emphasizes the underlying public interest in instilling and preserving "public confidence in the integrity of the legal profession," *In re Opinion 415,* 81 *N.J.* 318, 323, 407 *A.*2d 1197 (1979), and the lawyers' "duty of loyalty to his or her clients." *In re Opinion 653,* 132 *N.J.* 124, 129, 623 *A.*2d 241 (1993). Nevertheless, the factual context that triggers the application of either doctrine must provide a reasonable basis for concern that involves "something more than a fanciful possibility." *Id.* at 132, 623 *A.*2d 241 (quoting *Higgins v. Advisory Comm. on Professional Ethics,* 73 *N.J.* 123, 129, 373 *A.*2d 372 (1977)).

My view is that the potential conflict of interest the Court perceives between the offices at issue here is remote and speculative. I believe the Court's disposition is influenced by its sense that the dual office holding proposed by petitioner is unwise, but that decision is beyond our province. See *Ahto v. Weaver,* 39 *N.J.* 418, 432, 189 *A.*2d 27 (1963) ("Whether it is desirable or wise to have an assistant law officer who is precluded from performing all functions or serving in all matters is not a question within the judicial sphere."). Irrespective of whether the proposed joint office holding is wise from the municipality's perspective, I would allow it because I believe petitioner's interest as administrator to be consistent with and complementary to his responsibilities as borough attorney, and that there is little realistic likelihood that his interest in vindicating his performance as administrator materially would limit his ability to represent the municipality as its attorney, the position that he apparently has fulfilled diligently over the past ten years.

I

The Court's opinion fairly summarizes the factual context underlying its disposition. The Court refers to the text of the Old Tappan Ordinances defining the duties of the borough administrator and the borough attorney. *Ante* at 500, 745 *A.*2d at 499–500.

The ordinances provide that the borough administrator is required to act as liaison between the governing body of the various borough departments and officials, under the supervision of the mayor and council. *Old Tappan, N.J., Rev. Ordinances* §§ 2–29.1, 2–29.4 (May 1997). The borough attorney is required to represent the Borough in judicial and administrative proceedings and to provide legal counsel and advice to the mayor and council. *Id.* at § 2–13.1, –13.2 (July 1978). The ordinance governing the administrator expressly provides that his duties shall not infringe on the duties and powers of other Borough officers. *Id.* at §§ 2–29.1, 2–29.4.

The Court specifically acknowledges that the statute regulating the Municipal Council form of government, *N.J.S.A.* 40:81–11 *expressly* authorizes the same person to hold the offices of municipal manager and municipal attorney. *Ante* at 501, 745 *A.*2d at 500. Similar authorization is found in the statutes regulating the Mayor–Council–Administrator form of government, *N.J.S.A.* 40:69A–149.8(a), and the Small Municipality Plan A form of government, *N.J.S.A.* 40:69A–122.

Moreover, the Local Government Ethics Law recently enacted in 1991, *N.J.S.A.* 40A:9–22.1 to –22.25, provides that that statute does not "prohibit one local government employee from representing another local government employee where the local government agency is the employer and the representation is within the context of official labor union or similar representational responsibilities[.]" *N.J.S.A.* 40A:9–22.5(h).

Because no hearing was held by the ACPE, no factual record exists to enlighten the Court about the probability that petitioner's interests in vindicating his conduct as administrator would materially limit his ability to serve as Borough attorney. In the Petition for Review and at oral argument, petitioner represented that he knew of no instances in the past ten years in which the administrator's own interests were antagonistic to those of the Borough.

## II

Underlying the Court's determination that the dual office holding proposed by petitioner is barred by *RPC* 1.7 is the broad principle that "no branch of government has the power to authorize, either explicitly or implicitly, conduct by attorneys that violates the ethical standards imposed by the judiciary." *In re Opinion 621,* 128 *N.J.* 577, 590, 608 *A.2d* 880 (1992). That principle is unassailable in view of our "exclusive jurisdiction over the practice of law [and] the regulation and discipline of attorneys." *Id.* at 592, 608 *A.2d* 880.

Nevertheless, the Court declines to conclude that the "appearance of impropriety" doctrine, *RPC* 1.7(c), bars petitioner's simultaneous service as Borough attorney and Borough administrator because, as the Court acknowledges, "the Legislature has expressly held the two offices to be compatible." *Ante* at 501, 745 *A.2d* at 500. That concession by the Court emphasizes that the Rules of Professional Conduct are not to be applied "in a vacuum," see *In re Opinion 415, supra,* 81 *N.J.* at 325, 407 *A.2d* 1197, but rather should be interpreted and applied pragmatically and with proper regard to existing legislation as well as to contemporary practices.

Similar reasoning supports the Court's conclusion that petitioner's simultaneous holding of the offices of attorney and clerk-administrator does not violate the common law doctrine of incompatibility of office. The classic description of that doctrine is found in *State ex rel. Clawson v. Thompson,* 20 *N.J.L.* 689, 689–90 (Sup.Ct.1846):

> Where there is no express provision, the true test is, whether the two offices are incompatible in their natures, in the rights, duties, or obligations connected with or flowing out of them. Offices, says Bacon, are incompatible or inconsistent, when they cannot be executed by the same person; or when they cannot be executed with care, and ability; or where one is subordinate to, or interferes with another, [o]r where one office is under the control of another.
>
> [Citations omitted.]

A more modern expression of the incompatibility doctrine is set forth in *Reilly, supra,* 33 *N.J.* at 543, 166 *A.2d* 360:

> Incompatibility is usually understood to mean a conflict or inconsistency in the functions of an office. It is found where in the established governmental scheme one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another.

In *Reilly*, the question was whether the office of municipal attorney was incompatible under the common law with the office of State Senator. Writing for a divided Court, Chief Justice Weintraub concluded that the offices were not incompatible. In the process, he emphasized the distinction between a conflict of *duties* that triggers the common law incompatibility doctrine and a conflict in *interests*:

> There is a difference between the subject of incompatible offices and the subject of conflict in *interests*. In the former, a clash of *duties* inheres in the very relationship of one office to the other and is contemplated by the scheme of governmental activities, albeit the occasions may be rare. The consequence will be the nonperformance (or the questionable performance) of one or the other of the prescribed duties. On the other hand, a conflict in interests by virtue of a dual officeholding by a legislator will not inevitably arise as an incident of the relationship of the two offices.
>
> 

[*Id.* at 549, 166 *A.*2d 360.]

The Court in *Reilly* considered the possibility that a future conflict of interests could render the two offices in question incompatible at common law:

> We are not discussing the effect of an *actual* conflict of interests. Plainly the common law dealt with that subject and forbade an officer from acting in a particular matter permeated by an *actual* conflict.... Rather, the question is whether the common law forbade the holding of office because of a possibility of a future conflict of interests. As we have said, the possibility of a conflict of interests is inevitable in a legislator. Of course conflicts of that kind vary in intensity from the distant and inconsequential to the immediate and severe. And it may well be that public policy warrants excising from the total scene the possibility of a conflict of interests generated by additional public officeholding and employment.... And as we have already said, our Legislature, which is the ultimate authority with respect to this issue, may constitutionally prohibit it. The question before us, however, is not whether it is unsound for a legislator to hold local office but rather whether the common law doctrine of incompatibility reached into the area of possible conflicts of interests and forbade such dual officeholding because of it.
>
> 

[*Id.* at 550, 166 *A.*2d 360 (citations omitted).]

The Court concluded that the theoretical possibility of a future conflict of interests did not make the two offices incompatible, *id.* at 552–53, 166 *A.*2d 360, and observed that the Legislature had

primary responsibility for determining whether the potential for a conflict of interests should result in a prohibition against dual officeholding:

> The matter is of obvious public interest and hence we should add a word about the respective responsibilities of the several branches of government under our *Constitution.* Except as to offices created by the *Constitution,* public offices and employments are ultimately the creatures of legislation. The Legislature alone may determine the duties and the interrelation of the public posts it establishes or authorizes to be established. Within the constitutional framework, the Legislature is the architect of the structure of government. The Judiciary has no creative power in that area. The court's function is to enforce prohibitions fashioned by statute or by the common law. Whether a further ban would be wise or unwise is not a subject upon which we may properly venture a view, and this opinion should not be understood to do so. We hold only that the common law did not bar the dual officeholding involved in this case, and that the question whether it should be barred in the public interest reposes in the power and responsibility of the legislative department.
>
> *[Id.* at 553, 166 *A.*2d 360.]

This Court candidly acknowledged in *Reilly* the significant legislative role in determining whether potential conflicts of interest should bar dual office holding. That the Legislature expressly has permitted the dual office holding at issue before us does not preclude the Court from prohibiting it because of a possible conflict of interest. But as in the case of the "appearance of impropriety" doctrine, the legislative determination that the offices may be held by the same person is entitled to respectful consideration in our disposition. As Chief Justice Wilentz observed in *In re Opinion 621, supra,* 128 *N.J.* at 604–05, 608 *A.*2d 880, "[t]he judgment of the Legislature and the Executive concerning the lack of such appearance [of impropriety] is simply factually persuasive, and the impact on the public interest, even though asserted by the executive and legislative branches, would be a concern of ours no matter who asserted it." *See also Knight v. Margate,* 86 *N.J.* 374, 391, 431 *A.*2d 833 (1981) (noting that judicial branch will give deference to other branches of government when legitimate legislative interests exist that involve constitutional responsibilities of judiciary).

Another relevant factor, although also not decisive, is the well-established practice in the private sector of lawyers functioning as

executives. Lawyers who serve as house counsel to private corporations frequently divide their duties and responsibilities between legal and executive functions. Although those lawyers might theoretically have occasion to offer legal advice that undermines or is inconsistent with an executive decision made by them in their executive roles, the likelihood of such a conflict occurring undoubtedly is viewed as too remote to warrant serious concern. The reason is obvious. The lawyer in the business world who also assumes executive responsibilities does not compartmentalize those functions. Rather, the lawyer's legal training helps to shape that lawyer's executive decisions, and his or her managerial skills undoubtedly lend context to legal decisions. Although the potential for a conflict between those roles may theoretically exist, the business employer justifiably assumes that the loyalty and responsibility to the company of lawyers with executive duties will minimize, if not eliminate, the likelihood that the lawyer will be tempted to temper his legal advice in order to enhance his stature as an executive.

The very same dynamic can be expected to occur in local government. Petitioner is no stranger to the Borough of Old Tappan. He informed the ACPE that he has served that municipality as Borough attorney for the past ten years and that his law firm has served in that capacity for the past twenty-five to thirty years. Undoubtedly, he has earned and enjoys a good reputation in the municipality because of the quality of his past legal services. He informs us that the proposed dual officeholding is intended to save money for the Borough because petitioner would be salaried, whereas legal services previously were billed on an hourly basis.

The Court hypothesizes the circumstances in which petitioner's representation of the Borough, which he apparently has satisfactorily performed for the past ten years, might be materially limited by his own interests in vindicating his conduct as municipal administrator:

> Such a person [the administrator] will from time to time have the need for legal counsel concerning the propriety of actions taken in these many diverse areas of responsibility. More importantly, the administrator may need legal advice on

actions that he or she may have already taken.  When the municipal attorney counsels the municipal administrator, he or she is really giving legal advice to the municipality itself.

. . . .

We envision many circumstances in which the conduct of the administrator might be called into question and require legal counsel and advice, such as in employment decisions that might give rise to employment discrimination claims, in contract administration that might give rise to claims of preferential bidding, in licensing decisions that might give rise to claims of selective enforcement of ordinances.  In all such circumstances, the borough administrator as chief operating officer of the municipality should have access to independent counsel and advice.  The municipality is poorly served by an attorney whose personal interests are potentially in conflict with those of his client.

[*Ante* at 505, 745 *A.*2d at 501–02.]

Respectfully, I believe that the Court's concerns are unrealistic and exaggerated.  If petitioner, as administrator, were to make employment decisions, licensing decisions, decisions relating to contract administration, or any other decisions within the scope of his duties, he undoubtedly would bring to bear in the decisional process the legal skills he possesses and has developed over the past ten years as Borough attorney.  The likelihood that petitioner would commit himself and the municipality to an executive decision uninformed by legal principles, and then later on seek his own counsel to pass on the legality of his own executive conduct, is simply too remote and speculative to serve as a sound or credible foundation for the Court's resolution of this appeal.  Undoubtedly, petitioner would blend, not bifurcate, his legal and administrative skills in discharging his responsibilities to the Borough.  On those rare occasions on which he may believe that his objectivity is compromised to some degree, he may recommend that the municipality seek outside counsel.  But the Court's underlying assumption that petitioner routinely would be switching hats, first making executive decisions and thereafter providing after-the-fact legal advice to himself as administrator that might prove to be embarrassing, is simply no "more than a fanciful possibility." *Higgins, supra,* 73 *N.J.* at 129, 373 *A.*2d 372.

The Court's legal conclusion is novel and not supported by prior opinions either of this Court or the ACPE dealing with dual office holding by attorneys, which typically involve attorneys or their partners performing legal services for two public entities. *See, e.g., In re Opinion 415, supra,* 81 *N.J.* 318, 407 *A.*2d 1197 (holding that attorney cannot serve as county counsel and as municipal attorney within the same county); Opinion 366 (concluding that attorney cannot represent board of adjustment in municipality in which partner is municipal attorney); Opinion 164 (holding that attorney cannot represent both board of adjustment and planning board in same municipality).

Nor does the Court's conclusion that petitioner's own interest in vindicating his performance as administrator constitutes a conflicting interest that materially limits his representation of the Borough find support in case law throughout the country focusing on the nature of a lawyer's disqualifying personal interest. *See generally Restatement (Third) of the Law Governing Lawyers* § 206 (Proposed Final Draft No. 1, 1996) Topic 2 (Conflict between Interests of Lawyer and Client) (providing illustrations of lawyers' disqualifying personal interests). Typically, a lawyer's disqualifying personal interest is a financial or professional interest that is adverse to the client's interests. The interest of petitioner that the Court concludes is disabling is dissimilar to the various disqualifying interests of lawyers cited by the Restatement.

In other contexts, the Court has demonstrated more flexibility in its evaluation of potential conflicts of interest. *See In re Opinion 662,* 133 *N.J.* 22, 31–32, 626 *A.*2d 1084 (1993) (reversing ACPE and holding that attorney, or attorney's associate, may serve as municipal attorney and municipal prosecutor of same municipality, addressing need for recusal on case-by-case basis); *In re Opinion 653, supra,* 132 *N.J.* 124, 623 *A.*2d 241 (reversing ACPE and holding that partners in law firm may serve simultaneously as County Counsel and as counsel to County Vocational School Board); *Petition for Review of Opinion 552,* 102 *N.J.* 194,

507 *A.*2d 233 (1986) (reversing ACPE's *per se* rule prohibiting attorney from representing governmental entity and entity's officials or employees that are co-defendants in civil rights action and permitting such representation absent actual conflict of interest). The Court's observation in *Opinion 552, supra,* is especially pertinent to the issue before us:

> We believe that the appropriate rule for dealing with potential conflicts of interests in the context of a § 1983 action must be grounded upon common sense, experience, and realism. These considerations forcefully suggest that the joint representation of clients with potentially differing interests is permissible provided there is a substantial identity of interests between them in terms of defending the claims that have been brought against all defendants. The elements of mutuality must preponderate over the elements of incompatibility.

> [102 *N.J.* at 204, 507 *A.*2d 233.]

## III

Because the *mutual* interests of petitioner as Borough Attorney and as administrator in serving the Borough's best interests preponderate over any theoretical personal interest petitioner may possess in vindicating his performance as administrator, I would allow petitioner to hold both offices. The guiding principle was clearly stated by this Court in *Opinion 552, supra*:

> [I]n situations in which there is no actual conflict of interests, or the likelihood of an actual conflict of interests is remote and poses no realistic threat to the effective representation of such multiple defendants, an attorney should not be prohibited from representing both parties.

> [102 *N.J.* at 208, 507 *A.*2d 233.]

The wisdom of petitioner's dual office holding is not before us, only its ethical implications. If the arrangement proposed proves to be awkward or unsound, the municipality is free to make that governmental decision on its own. The ethics issue raised simply is too abstract and conjectural to warrant this Court's interference.

Justice GARIBALDI joins in this opinion.

*For Affirmance*—Chief Justice PORITZ and Justices O'HERN, COLEMAN, LONG and VERNIERO—5.

*For reversal*—Justices GARIBALDI and STEIN—2.