735 A.2d 1 (1999)
324 N.J. Super. 178
STATE of New Jersey, Plaintiff-Respondent,
v.
Robert F. CLARK, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 28, 1999.
Decided June 14, 1999.
As Amended on Reconsideration June 17, 1999.
*2 Ivelisse Torres, Public Defender, for defendant-appellant (Kevin G. Byrnes, Designated Counsel, of counsel and on the brief).
Glenn Berman, Middlesex County Prosecutor, for plaintiff-respondent (Simon Louis Rosenbach, Assistant Prosecutor, of counsel and on the brief).
Defendant-appellant filed a pro se supplemental brief.
Before Judges STERN, LANDAU and BRAITHWAITE.
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Following a jury trial, defendant was convicted of two counts of sexual assault, N.J.S.A. 2C:14-2b, and two counts of endangering the welfare of a child, N.J.S.A. 2C:24-4a. Believing that consecutive sentences were "mandated by our legislature," the trial judge imposed consecutive ten-year custodial terms with a five-year parole bar on each sexual assault conviction and concurrent four-year custodial terms on the endangering convictions.
Defendant now appeals and his counsel contends:
POINT I
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND *3 ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE IMPROPER ADMISSION OF HIGHLY PREJUDICIAL CHARACTER EVIDENCE. (Not Raised Below).
POINT II
THE FAILURE OF THE TRIAL COURT TO INSTRUCT THE JURY IN A MULTI-COUNT INDICTMENT THAT IT MAY NOT CONSIDER EVIDENCE PROFFERED ON ONE ALLEGED CRIMINAL EPISODE TO PROVE THAT THE DEFENDANT WAS CRIMINALLY DISPOSED TO COMMIT ADDITIONAL CRIMES INVOLVING A DIFFERENT VICTIM AT A DIFFERENT TIME IN ANOTHER ALLEGED CRIMINAL EPISODE VIOLATED THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION. (Not Raised Below).
POINT III
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE IMPROPER ADMISSION OF HEARSAY EVIDENCE.
POINT IV
THE DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ART. I PAR. 1 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE LAW OF ORAL STATEMENTS (A KOCIOLEK CHARGE) NOTWITHSTANDING THE STATE'S SUBSTANTIAL RELIANCE ON ORAL STATEMENTS TO PROVE ITS CASE. (Not Raised Below).
POINT V
THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I PAR. 10 OF THE NEW JERSEY CONSTITUTION.
POINT VI
THE FAILURE OF THE TRIAL COURT TO MERGE OFFENSES VIOLATES THE FOLLOWING: FEDERAL AND STATE CONSTITUTIONAL BARS AGAINST DOUBLE JEOPARDY, DUE PROCESS OF LAW, AND NEW JERSEY MERGER LAW. (Not Raised Below).
POINT VII
THE DEFENDANT'S SENTENCE IS EXCESSIVE:
A. THE TRIAL COURT ERRED BY IMPROPERLY BALANCING THE AGGRAVATING AND MITIGATING FACTORS.
B. THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES.
In a pro se brief, defendant raises the following questions:
1. WAS THE DEFENDANT'S RIGHT TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND N.J.S.A. CONST. ART. 1, PAR. 10 VIOLATED IN THAT DEFENSE COUNSEL WAS ALSO EMPLOYED IN THE SAME COUNTY, AND AT THE SAME TIME AS A PART-TIME PROSECUTOR?
2. WAS THE DEFENDANT'S RIGHT TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND *4 N.J.S.A. CONST. ART. I, PAR. 10 VIOLATED BY THE TRIAL COURT'S FAILURE TO HOLD AN EVIDENTIARY HEARING INTO THE APPROPRIATENESS/INAPPROPRIATENESS FOR MR. WRIGHT CONTINUING AS DEFENSE COUNSEL IN LIGHT OF HIS WORKING FOR BOTH THE PROSECUTOR AND THE PUBLIC DEFENDER'S OFFICE?
Defendant maintains in his pro se brief, which is uncontroverted by the State, that his trial counsel was also a part-time municipal prosecutor in New Brunswick, a municipality located in the county where defendant was tried. Defendant was unaware of his counsel's other position during trial and did not learn of it until long after the completion of his trial and sentence. We hold that it is impermissible for a part-time municipal prosecutor in a municipality located in the county where defendant is tried to represent a criminal defendant, and therefore reverse defendant's convictions and remand for a new trial.

I
The State produced evidence that defendant improperly touched two young girls, who were friends, in their "private" areas in April 1992 in Jamesburg. Both girls were less than thirteen years of age when the assaults occurred. At trial, both victims testified to defendant's conduct. The State also presented the testimony of the mother of one of the victims and a police officer who both testified to other statements by the child victims pursuant to N.J.R.E. 803(c)(27), following a N.J.R.E. 104(a) hearing. Furthermore, the State produced two neighbors of one victim who witnessed defendant assault the other victim. Finally, the State presented the testimony of an inmate who was housed in a cell next to defendant's two weeks prior to trial. The inmate testified to inculpatory statements made by defendant. The inmate also testified that: "[defendant] felt he was going to beat this in trial because [two] witnesses ... weren't available and the little kids were in foster care and the little kids [defendant] felt were too young, that a jury wouldn't believe the little kids." With this evidence the jury convicted defendant.
Defendant's defense was handled by E. Ronald Wright, an attorney with offices in New Brunswick, who was also a part-time municipal prosecutor in New Brunswick. Wright was apparently assigned to represent defendant by the Public Defender's office. Defendant was unaware of Wright's position as a part-time municipal prosecutor during the trial and only learned of his position when he read an article in the Newark Star Ledger newspaper dated August 18, 1998. The article reported Wright's involvement as a part-time municipal prosecutor in New Brunswick from 1976 to 1980 and again from April 1992 to some point in 1998. Wright's last stint as municipal prosecutor encompassed the period he represented defendant, who was tried in January 1994 and sentenced on November 7, 1994.

II
As we see the issue, the question is whether a municipal prosecutor can also serve as a defense attorney in an indictable criminal matter that is tried in the same county as the municipality where the attorney is a prosecutor. The answer to this question "rests on an evaluation of the potential for the appearance of impropriety." In re Opinion 662 of the Advisory Comm. on Prof. Ethics, 133 N.J. 22, 27, 626 A.2d 1084 (1993). RPC 1.7(c)(2) states that
in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of *5 disservice to either the public interest or the interest of one of the clients.
To determine whether an appearance of impropriety is created we must look at the "frequency of antagonistic relations" between a municipal prosecutor and a defense attorney. Opinion 662, supra, 133 N.J. at 28, 626 A.2d 1084.
"A ... municipality may employ an attorney-at-law as a prosecutor, under the supervision of the Attorney General or county prosecutor, who may represent the State ... or municipality in any matter within the jurisdiction of the ... municipal court." N.J.S.A. 2B:12-27 (emphasis added). This statute makes clear that a municipal prosecutor is under the supervision of the Attorney General or county prosecutor, the offices that generally prosecute indictable offenses. Although the statute was enacted in 1996, after defendant's trial, it did not establish new law but simply set forth the long established relationship between municipal prosecutors and the two other prosecuting authorities in this State. "N.J.S.A. 2A:158-4 and 5 give the Attorney General and county prosecutors plenary jurisdiction to prosecute all criminal matters in this State." State v. Downie, 229 N.J.Super. 207, 209 n. 1, 550 A.2d 1313 (App.Div.1988), aff'd, 117 N.J. 450, 569 A.2d 242, cert. denied, 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990). The power of the Attorney General and county prosecutors permits them to prosecute all "offenders against the laws" including those that are traditionally prosecuted by municipal prosecutors in municipal courts. Ibid. With this "primary authority to prosecute," the Attorney General and county prosecutors "may supersede the various municipal prosecutors." Ibid. Thus, it is clear that a municipal prosecutor is the third level of a tripartite system of prosecution in this State. To permit a municipal prosecutor to act as a defense attorney in the same county creates a clear appearance of impropriety.
Moreover, the potential for conflict between a municipal prosecutor and a defense attorney representing persons charged with indictable offenses in the same county is clear in specific areas. County prosecutors often downgrade indictable offenses so that they are then tried in municipal courts and prosecuted by the municipal prosecutor. Municipal prosecutors may conduct probable cause hearings "in the absence of the county prosecutor." R. 3:4-3(a). In addition, municipal prosecutors may, on occasion, represent the State in a motion to suppress evidence. R. 3:24(d).
Other instances of antagonistic relations between municipal prosecutors and defense attorneys in the same county include appeals from municipal courts, R. 3:23, and the prosecution of certain indictable offenses in municipal court. N.J.S.A. 2B:12-18. The county prosecutor or the Attorney General, in appeals from municipal courts not involving municipal ordinances, is the prosecuting attorney, R. 3:23-9, using a record created in part by the municipal prosecutor. R. 3:23-8. With respect to certain indictable offenses, where a defendant waives indictment and trial by jury in writing, and with the consent of the county prosecutor, the offense may be disposed of in municipal court and, therefore, potentially prosecuted by the municipal prosecutor. N.J.S.A. 2B:12-18.
We acknowledge that a municipal prosecutor ordinarily prosecutes disorderly persons offenses and motor vehicle violations, Opinion 662, supra, 133 N.J. at 28, 626 A.2d 1084, and that defendant was charged with indictable offenses in a municipality other than the municipality where his trial counsel was a prosecutor. Despite the obvious differences between the two classes of offenses ordinarily tried in the municipal court and the Law Division, the appearance of impropriety is clear. "Prosecutors occupy a unique position in our criminal justice system. The primary duty of a prosecutor is ... to see that justice is done." State v. Ramseur, 106 N.J. 123, 320, 524 A.2d 188 (1987). In ensuring that justice is done, every effort *6 must be made to imbue the criminal process with integrity and fair play.
Just as the prosecutor occupies a unique position in our criminal justice system, so does the defense attorney. Their roles, however, must be distinct. "The prosecutor and defense attorney are advocates for their respective sides." State v. Avena, 281 N.J.Super. 327, 336, 657 A.2d 883 (App.Div.1995). Because of their positions, one attorney cannot be both a municipal prosecutor and a defense attorney in the same county at the same time.
What happened here can "undermine public confidence in our system of government and in the independence and integrity of the legal profession." In re Opinion 452 of the Advisory Comm. on Prof. Ethics, 87 N.J. 45, 49, 432 A.2d 829 (1981). The integrity of our criminal justice system cannot permit a municipal prosecutor to confer or consult with a county prosecutor in connection with a defendant he intends to prosecute in municipal court one day, and then the next day represent a different defendant in a trial prosecuted by that same county prosecutor.
[A] lawyer must avoid even the appearance of impropriety ... to the end that the image of disinterested justice is not impoverished or tainted. Thus it is that sometimes an attorney, guiltless in any actual sense, nevertheless is required to stand aside for the sake of public confidence in the probity of the administration of justice.
[State v. Rizzo, 69 N.J. 28, 30, 350 A.2d 225 (1975).]
In every trial the integrity of the process is at stake, see State v. Wiggins, 158 N.J.Super. 27, 32, 385 A.2d 318 (App.Div. 1978), and an attorney, who is a municipal prosecutor at the same time that he or she represents a defendant in the same county, undermines the integrity of the process.
Moreover, a municipal "prosecutor, like the [municipal] judge, must be impartial." State v. Storm, 141 N.J. 245, 254, 661 A.2d 790 (1995). Because of the requirement of impartiality, the municipal judge is prohibited from practicing criminal law. R. 1:15-1. We are satisfied that a municipal prosecutor is likewise prohibited from practicing criminal law as a defense attorney in the county where he or she holds the office of municipal prosecutor. This is necessary to maintain the prosecutor's impartiality and to ensure confidence and integrity in the judicial proceedings in which he or she participates. In our judgment, a municipal prosecutor representing a criminal defendant in the same county "create[s] an appearance of impropriety in the mind of a reasonable and informed citizen." In re Opinion 653 of the Advisory Comm. on Prof. Ethics, 132 N.J. 124, 133, 623 A.2d 241 (1993).
We are aware of State v. Zold, 105 N.J.Super. 194, 251 A.2d 475 (Law Div. 1969), aff'd o.b., 110 N.J.Super. 33, 264 A.2d 257 (App.Div.), certif. denied, 57 N.J. 131, 270 A.2d 34 (1970), which held that a municipal attorney, who served as municipal prosecutor, was not disqualified to defend a person who was charged with robbery. There, the trial court dismissed defendant's petition for post-conviction relief on the ground of ineffective assistance of counsel, and we affirmed. Although the facts in Zold are similar to those presented here, we decline to follow it because we are satisfied that the viability of its holding is questionable.
In light of our holding, we must determine its retroactive effect. Our Supreme Court has stated:
This court has four options in any case in which it must determine the retroactive effect of a new rule of criminal procedure. See State v. Burstein, 85 N.J. 394, 402-03[, 427 A.2d 525] (1981). The Court may decide to apply the new rule purely prospectively, applying it only to cases in which the operative facts arise after the new rule has been announced. Ibid. Alternatively, the Court may apply the new rule in future cases and in the case in which the rule is announced, but not in any other litigation *7 that is pending or has reached final judgment at the time the new rule is set forth. Id. at 403[, 427 A.2d 525]. A third option is to give the new rule "pipeline retroactivity," rendering it applicable in all future cases, the case in which the rule is announced, and any cases still on direct appeal. Ibid. Finally, the Court may give the new rule complete retroactive effect, applying it to all cases, including those in which final judgments have been entered and all other avenues of appeal have been exhausted. Ibid.

* * *
[T]hree factors generally are considered to determine whether the rule is to be applied retroactively: "(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice." State v. Nash, 64 N.J. 464, 471[, 317 A.2d 689] (1974); accord State v. Gilmore, 103 N.J. 508, 544[, 511 A.2d 1150] (1986); Burstein, supra, 85 N.J. at 406[, 427 A.2d 525].
[State v. Knight, 145 N.J. 233, 249, 251[, 678 A.2d 642] (1996).]
Considering these factors, we conclude that, except for its effect in the present case, our holding that counsel's representation of defendant created an appearance of impropriety will apply only to cases in which defense counsel's first appearance is made or filed on or after July 1, 1999, "but not in any other litigation that is pending or has reached final judgment." Id. at 249, 678 A.2d 642. See also State v. Donis, 157 N.J. 44, 58-59, 723 A.2d 35 (1998).
We reach this conclusion because the purpose of our holding is not furthered by giving it retroactive effect. "[T]he old rule was [not] altered because it substantially impaired the reliability of the truth-finding process." State v. Knight, supra, 145 N.J. at 251, 678 A.2d 642. Further, we are satisfied that there has been substantial reliance on the holding in Zold which had not been questioned in thirty years. Finally, we conclude that a retroactive application of our holding would impose "unjustified burdens on our criminal justice system." Id. at 252, 678 A.2d 642.

III
Because we are reversing defendant's convictions and remanding for a new trial, we deem it appropriate to comment on certain other points raised by the appeal because they may become issues during defendant's second trial. The first two points raised by defendant's counsel are raised as plain error. There was no improper admission of any character evidence during Christine Accordini's testimony. She testified that she observed defendant touching one of the victims and overheard him make sexually explicit statements to the child. The challenged testimony is as follows:
I wasn't really listening, but I mean for someit just caught my ear. It caught meIt caught me by total shock. First of all I was looking at them because [the victim] was on his lap because my daughter has been told not to sit on his lap, and I saw this little girl sitting on his lap so it kind of threw me, and then periodically I would listen to what he was saying but not the whole conversation.
Accordini's testimony that she told her daughter not to sit on defendant's lap was not "extraordinarily prejudicial" as defendant's counsel contends. Although one could draw an adverse inference from the fact that Accordini was concerned about her child associating with defendant, one could not reasonably interpret this testimony to mean that defendant had a reputation for sexually abusing children. A review of the testimony clearly reveals that Accordini's "shock" was not in response to seeing one of the victims sitting on defendant's lap, but was in response *8 to hearing what defendant said to the young victim.
Defendant did not raise any objection to the admission of this testimony at trial, thus the plain error standard applies and we should not reverse unless the error was "clearly capable of producing an unjust result." R. 2:10-2. Stated in terms of its effect in a jury trial, the possibility must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
Further, defendant's failure to object below can be taken to mean that the error was not significant in the context of the trial. Id. at 337, 273 A.2d 1. Also, in cases where other proofs are overwhelming, an error not contradicting the sufficiency of those proofs will not provide a reasonable doubt as to the reliability of the jury's conclusion. See State v. Tirone, 64 N.J. 222, 227, 314 A.2d 601 (1974). It cannot be said, in light of the evidence introduced by the State, that this testimony led the jury to a result it otherwise would not have reached.
Defendant's counsel's other crimes argument in his second point is without merit. R. 2:11-3(e)(2). The judge gave an instruction to the jury that adequately explained that it had to consider each count of the indictment separately and could not find defendant guilty of one offense because it found him guilty of another.
Next, defendant's counsel asserts that the trial judge erred in permitting the mother of one victim and a police officer to testify as to one of the victim's statements pursuant to N.J.R.E. 803(c)(27), after conducting a N.J.R.E. 104(a) hearing.
N.J.R.E. 803(c)(27) provides:
A statement by a child under the age of 12 relating to sexual misconduct committed with or against that child is admissible in a criminal, juvenile, or civil proceeding if (a) the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement at such time as to provide him with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of Rule 601.
Under this rule, a trial judge may admit hearsay statements made by a child sexual abuse victim, if the judge first finds that the conditions of the rule have been met.
To this end, the trial judge must determine whether the out-of-court statements possess "sufficient indicia of reliability" in order to be admitted at trial. State v. D.R., 109 N.J. 348, 363, 537 A.2d 667 (1988). The judge should examine certain factors and look at the totality of the circumstances surrounding the making of the statements. See State v. R.M., 245 N.J.Super. 504, 517-18, 586 A.2d 290 (App. Div.1991). Factors that the trial judge may consider include spontaneity and consistent repetition, mental state of the declarant, the use of terminology not expected of a child of similar age, and the lack of motive to fabricate. Idaho v. Wright, 497 U.S. 805, 821-22, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638, 656 (1990). Additionally, the judge should consider the partisanship of the interviewer and the interviewer's ability to recall. R.M., supra, 245 N.J.Super. at 517-18, 586 A.2d 290.
Following a N.J.R.E. 104(a) hearing, the trial judge concluded that the statements possessed sufficient indicia of *9 reliability and therefore allowed them to be introduced into evidence. The judge's finding is supported by sufficient credible evidence in the record. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). The statements may therefore be admitted at the retrial.
In his fourth point defendant's counsel argues that the trial judge erred in not giving a charge pursuant to State v. Kociolek, 23 N.J. 400, 129 A.2d 417 (1957). At retrial, if the circumstance presents itself, a Kociolek charge should be given.
Finally, defendant's counsel raises issues as to defendant's sentence. Because we have reversed and remanded for a new trial, the sentence issues are moot. In the event they recur following retrial, we offer the following observations. The endangering the welfare of a child convictions should have merged with the sexual assault convictions because "the record suggests no basis for the endangering conviction[s] beyond the sexual assault[s]." State v. Still, 257 N.J.Super. 255, 259, 608 A.2d 404 (App.Div.1992).
The judge also mistakenly imposed consecutive sentences on the sexual assault convictions because she believed such a result was mandatory. No mandatory consecutive sentence applies here.
We reverse defendant's convictions and remand for a new trial.