**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5242-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RHUDELL C. CRUZ-SNELLING,
a/k/a RHUDY CRUZ, RHODELL
SNELLING, RHUDELL CHARLES
CRUZ-SNELLING, RHUDY C. CRUZ,
RHUDELL C. CRUZ, and RHODELL
CRUZ,

    Defendant-Appellant.

_____

Argued December 18, 2019 – Decided April 21, 2020

Before Judges Whipple, Gooden Brown, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-11-1420.

Douglas R. Helman, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Douglas R. Helman, of counsel and on the brief).

Erin M. Campbell, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Erin M. Campbell, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Rhudell C. Cruz-Snelling appeals from a January 11, 2018 judgment of conviction after a jury trial. We affirm.

Defendant raises the following arguments on appeal.

> POINT I: ALL OF THE CONVICTIONS MUST BE REVERSED BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT CRUZ-SNELLING WAS THE SHOOTER. (Not raised below).

> POINT II: THE STATE FAILED TO ESTABLISH BEYOND A REASONABLE DOUBT THAT CRUZ-SNELLING LACKED A GUN PERMIT. (Not raised below).

> POINT III: THE JUDGE ERRED IN ADMITTING TESTIMONY ABOUT CRUZ-SNELLING'S PRIOR GUN POSSESSION UNDER N.J.R.E. 404(B), AND COMPOUNDED THE ERROR BY FAILING TO PROVIDE AN APPROPRIATE CURATIVE OR LIMITING INSTRUCTION.

> A. The strictures of N.J.R.E. 404(b).

2

B.    The evidence regarding Cruz-Snelling's prior gun possession should not have been admitted under [Cofield[1]].

C.    The judge failed to properly instruct the jury after admitting the prior bad act evidence.

POINT IV: THE JUDGE DOUBLE-COUNTED CRUZ-SNELLING'S PRIOR CONVICTION, USING IT TO SENTENCE HIM TO AN EXTENDED TERM AND AS AN AGGRAVATING FACTOR. (Not raised below).

In a supplemental pro se brief, defendant additionally raises the following issues on appeal:

POINT I: THE STATE IMPERMISSIBLY SHIFTED THE BURDEN OF PROOF TO CRUZ-SNELLING TO PROVE THAT HE DID NOT VIOLATE N.J.S.A. 39-5(b)(1).  (Not raised below).

POINT II: THE PHOTOGRAPHIC IDENTIFICATION OF [CRUZ-SNELLING] VIOLATED HIS RIGHT TO DUE PROCESS BECAUSE THE PROCEDURE WAS IMPERMISSIBLY AND UNNECESSARILY SUGGESTIVE AND SHOULD HAVE BEEN SUPPRESSED.  (Not raised below).

POINT III: [CRUZ-SNELLING] WAS DENIED DUE PROCESS BECAUSE THE COURT PERMITTED A LAY WITNESS TO PROFFER EXPERT TESTIMONY WITHOUT A PROPER FOUNDATION.

---

[1]  State v. Cofield, 127 N.J. 328 (1992).

POINT IV: THE CUMULATIVE ERRORS DEPRIVED CRUZ-SNELLING A FAIR TRIAL. (Not raised below).

We glean the following facts from the record. On June 3, 2016, four individuals were driving around Kearny, some were drinking and taking drugs. They were Christina Pereira, Natasha Echevarria, Yeomen Brato, and Samantha Margalho. Around 1:00 a.m., they stopped and got out of the car on Kearny Avenue, to meet a woman named Erica Martinez. Pereira wanted to fight Martinez.

Around 1:30 a.m., while waiting for Martinez, someone with braids wearing a black sweater started shooting at them. While most of the group ran, Pereira did not and was shot in the wrist, and a bullet grazed her neck. The others ran back to Pereira and took her to a nearby hospital in Newark. Several Kearny police officers responded to the area of Kearny Avenue after a report of shots fired, but the shooter and the victims were gone.

Responding Officer Podolski found a .22 caliber bullet fragment and blood at the scene. Officer Manolis went to the hospital in Newark where he found Pereira in the emergency room; he took photos of a small hole in her right wrist that appeared to be a "small caliber bullet fragment or bullet round that went through." The photos were entered into evidence at trial.

A-5242-17T4

Detectives took photos of the scene, which were also entered into evidence, and obtained two surveillance videos of the scene from nearby stores. The videos showed a figure running, as well as a person firing a weapon at least four times at 1:23 a.m.

Pereira refused to be interviewed, but police were able to interview Echevarria. Echevarria gave Detective Gonzalez a statement detailing her account of the events of the shooting. When Gonzalez showed Echevarria a photo of defendant, she identified him as the person she recognized to be "Suicide" who had shot Pereira.

Based on Echevarria's identification and the surveillance video, arrest warrants were issued, and defendant was arrested the day after the shooting. He was indicted for second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); three counts of second-degree attempted aggravated assault, N.J.S.A. 2C:12-1(b)(1); and three counts of third-degree attempted aggravated assault, N.J.S.A. 2C:12-1(b)(2). Defendant was also indicted on drug charges that were later dismissed.

A-5242-17T4

Prior to trial, when presented with a stipulation that defendant did not have a permit for a gun, he refused to sign it, so the State asked the trial judge to include a 39-2(b)[2] instruction that allows a jury to presume defendant did not possess a gun permit until he established to the contrary.

At trial, the only witness other than police officers was Echevarria, who testified that in the early morning hours of June 3, 2016, she and her friends were driving around and ended up on Kearny Avenue because there was supposed to be a fight between Pereira and Martinez. Echevarria readily admitted she was "drunk and . . . high so [she] really don't remember exactly parts by parts . . . ."

She testified that after she and her friends got out of the car, at about 1:30 a.m., she heard gunshots coming from the corner and ran. She testified the shooter was wearing a black sweater and had his hair in braids, but she did not see whether the shooter had facial hair. When asked whether the shooter was moving fast or slow, she stated she "wasn't watching whoever it was, I . . . just heard [a gunshot] and everybody started running." Echevarria admitted she was on Xanax and drunk, but that she did not initially tell police that. When

---

[2] N.J.S.A. 2C:39-2(b).

Echevarria heard Pereira screaming, she went to her and wrapped Pereira's bleeding arm and hand with a sweater and then took her to the hospital.

Echevarria testified she later went to the Kearny Police Department and gave a statement to police, but that she "was also medicated," which she did not tell police. Echevarria confirmed while she was at the police station, she identified a photo of "Suicide," who was defendant. When asked if she told the police she was able to identify the shooter, Echevarria responded "[y]es, but I was actually medicated, which I'm telling you now . . . I would have told them anything . . . I didn't say I saw . . . him at the scene . . . that's the face that I remember . . . I was also medicated that night, too, on junk, Xanax." At that point, because of the inconsistencies between Echevarria's testimony and her prior statement to police, the State asked that her prior statement be admitted and the court conducted a Gross[3] hearing.

During the Gross hearing, the judge heard testimony from Detective Gonzalez that when he took Echevarria's statement, she came to the station voluntarily, was "calm," and "did not appear to be under the influence." He did not smell alcohol on her breath, and she was not slurring her words or acting

---

[3] A hearing required under State v. Gross, 121 N.J. 1 (1990) to determine the reliability and admissibility of a prior inconsistent statement.

A-5242-17T4

abnormally. Based on his experience observing individuals under the influence of alcohol or narcotics from his work in street crimes, Gonzalez testified that Echevarria did not appear to be under the influence of any intoxicants.

The statement, which had been video recorded, was played for the trial judge. The judge found Echevarria's statement, as well as her identification, credible, and although there was only one photo shown to Echevarria, "it was presented in a manner in which the police were looking to ascertain whether the person in the photo was the person that she was describing as knowing and the question posed was very clear, is this the person that you're referring to as Suicide."

The trial judge found that during her in-court testimony, Echevarria was "attempting to be evasive" by feigning a lack of recollection, and "seems to remember in good detail some issues but when it comes to the actual shooting, all of a sudden her memory seems to go blank." The trial judge noted that Echevarria's testimony regarding her drinking and intoxication would be subject to exploration by defense counsel on cross-examination as to "any effect that may have had on her ability to observe [and] recall," but found that overall the "circumstances in which the statement and the identification were given are

8

credible and reliable." He therefore permitted portions of the video-recorded statement to be played for the jury.

The State also asked that a portion of Echevarria's statement, where she said she saw defendant with the same gun previously at Martinez's house, be admitted, as they asserted it was relevant to her inconsistent testimony regarding where Martinez lived and whether defendant lived there as well. The trial judge found that portion of Echevarria's statement was inconsistent with her trial testimony, where she "pretty much said she didn't see anything." The trial judge stated "if it was just a gun, I would agree with the defense, it would be prejudicial and there really would be no probative value to it but here[,] she previously testified she saw the defendant previously with that gun."

Echevarria then resumed her testimony, wherein she stated that what she said at the police station in her statement "was the truth," despite that she was intoxicated and not sober. Echevarria then indicated some of what she testified to earlier that day in court was not the truth, because she was nervous. This time, when asked if she saw defendant the night of the shooting, Echevarria responded she did see him, that "[h]e was the one with a gun in his hand," and she said otherwise earlier because she "was just nervous" and "was scared." She testified defendant was "just shooting" multiple shots from a car toward herself

and her friends. Echevarria also testified that she saw defendant with the same gun before at Martinez's house. When asked whether her testimony earlier that she did not remember whether the shooter had facial hair was true, Echevarria responded "I'm sorry, no," and testified the shooter had a beard. The State then asked Echevarria if the photo of defendant was the photo she identified as the shooter, to which she responded yes, and asserted it was the truth. Echevarria testified that she saw defendant shooting when she turned around before she ran.

During the jury charge conference, defense counsel, the prosecutor, and the trial judge discussed jury charges, including those for "out-of-court and in-court identification," "prior inconsistent statements," "false in one, false in all," and defendant's right not to testify. Defense counsel did not ask for a limiting instruction related to Echevarria's testimony about seeing defendant with the gun on a prior occasion in Martinez's home.

The trial judge fully instructed the jury regarding identification of defendant and the jury's function in determining whether Echevarria's identification was reliable and believable, or whether it was based on a mistake or for any other reason not worthy of belief. He instructed the jury they must decide whether there was sufficiently reliable evidence that defendant was the person who committed the offense, telling them "[e]ye witness identification

10

evidence must be scrutinized carefully," and that "even if made in good faith," a witness' categorical identification may be mistaken.

The trial judge then instructed the jury on the portions of the criminal code they must apply to the facts. Both defendant and the State indicated they were satisfied with the jury charges.

During deliberations, the jury asked to review the surveillance videos again, to review Echevarria's testimony and statement, to review Gonzalez' testimony, and to confirm the location of the perspective of the second surveillance video. The jury also asked if they could have defendant stand up so they could compare his body frame to the footage. After discussing with the judge, all counsel agreed playbacks of Gonzalez' and Echevarria's testimony and re-playing the two surveillance videos for the jury was acceptable. The next day, the trial judge played back the testimony of Echevarria and Gonzalez and played the surveillance videos for the jury once again; one of the videos was replayed twice at the jury's request. After further deliberations, the jury asked to see one of the surveillance videos twice more.

Approximately two and a half hours after the last replay of the videos, the jury returned a unanimous verdict, finding defendant guilty of: unlawful possession of a weapon; possession of a weapon for an unlawful purpose; two

counts of aggravated assault; and six counts of aggravated assault, extreme indifference.

Defendant was subject to a mandatory extended term because of his prior conviction for possession of a weapon for an unlawful purpose. In considering aggravating factors, the trial judge noted defendant's criminal history began as a juvenile in 2002, stating defendant was "involved in violent behavior since the age of about [thirteen]," he "only [knew] how to be violent and dangerous because that [was defendant's] history," and "[t]he extent and seriousness of [defendant's] prior record" showed an overwhelming risk defendant would commit another offense and an overwhelming need to deter.

The trial judge found the aggravating factors substantially outweighed the lacking mitigating factors, and, after merging some charges, sentenced defendant to: ten years for possession of a weapon for an unlawful purpose; a concurrent extended term of seventeen years with an eighty-five percent parole disqualifier for aggravated assault of the injured victim; and a consecutive term of eighteen months with eighteen months of parole ineligibility for three counts of second-degree attempted aggravated assault for the uninjured victims, for a total sentence of eighteen and a half years, with just under sixteen years' parole ineligibility.

This appeal followed.

## I.

On appeal, defendant argues that because there was insufficient evidence to prove beyond a reasonable doubt he was the shooter, the State did not meet its burden to establish the identity of the perpetrator, an essential element of aggravated assault.

Under Rule 2:10-1, "the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court."  Where no such motion was made, we "may refuse to consider it."  State v. Smith, 262 N.J. Super. 487, 511 (App. Div. 1993) (citing State v. Ross, 249 N.J. Super. 246, 253 (App. Div. 1991)).  However, we may consider the merits, if we so choose, "in the interest of justice."  Ibid.

Here, defendant did not move for a new trial on the grounds the jury verdict was against the weight of the evidence, so we need not consider defendant's argument that the State did not prove he was the shooter beyond a reasonable doubt.  However, considering the merits in the interest of justice, as permitted by Smith, we conclude "any trier of fact could rationally have found" defendant was the shooter beyond a reasonable doubt based on Echevarria's

testimony, the two surveillance videos, and the photos of the scene. See State v. Afanador, 134 N.J. 162, 178 (1993) (stating that where there is a challenge to a jury conviction, "[t]he evidence should be sifted to determine whether any trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present.").

While defendant argues "[n]o reasonable jury could have concluded, based entirely on the testimony of a witness whose ability to perceive was irredeemably compromised, that the State proved the issue of identity beyond a reasonable doubt," defendant did not seek to have Echevarria's testimony barred at trial on these or any other grounds. Additionally, the jury viewed the surveillance videos showing the shooter multiple times. While it was dark, the record reflects that defendant's distinctive features, such as his size, his hair, and his beard, were visible on the surveillance video and corroborated Echevarria's testimony. The jury was also able to view photos of the scene, taken shortly after the shooting, to gauge the distance between Echevarria and the shooter as well as the lighting conditions, and weigh whether Echevarria's testimony was credible under the circumstances. Additionally, the jury heard Echevarria's own testimony that she was intoxicated during the shooting and while giving her statement and was able to weigh whether that impacted the reliability of her

testimony and whether her testimony matched up with the surveillance videos and photo evidence of the scene.

Further, the trial judge meticulously instructed the jury as to witness identification of a perpetrator and the factors they were to consider when determining whether Echevarria's identification of defendant was credible, such as stress, lighting, distance, and her intoxication, among many other factors. Finally, there is no clear evidence that the jury was mistaken or prejudiced; to the contrary, they requested playback of Echevarria's and Gonzalez' testimony, and asked to review the surveillance video several times, which indicates they were diligent in carefully considering and weighing the evidence.

Therefore, based on the foregoing reasons, we discern no "miscarriage of justice under the law," and the jury's verdict should not be disturbed on the grounds that the State did not prove defendant was the shooter beyond a reasonable doubt. See State v. Jackson, 211 N.J. 394, 413 (2012) (holding a jury conviction "should not be disturbed on appeal 'unless it clearly appears that there was a miscarriage of justice under the law'").

## II.

We also reject defendant's next argument his conviction for unlawful gun possession must be overturned because the State presented no proof he did not

15

possess a gun permit, which was an essential element of the crime, but rather relied solely on the inference allowed by N.J.S.A. 2C:39-2(b), presuming that defendant did not have a permit until he established to the contrary.

In State v. Ingram, the New Jersey Supreme Court considered the constitutionality of the statutory presumption of N.J.S.A. 2C:39-2 that a defendant accused of weapons possession shall be presumed not to have the required permit until he establishes otherwise. 98 N.J. 489, 491 (1985). There, the Court stated

> (1) the absence of a required permit is an essential element of a weapons offense as defined under N.J.S.A. 2C:39-5; (2) once possession of a weapon is shown and an accused fails to come forward with evidence of a permit, the State may employ the statutory presumption of N.J.S.A. 2C:39-2 to establish the absence of the required permit; and (3) a jury should be instructed that although such a statute authorizes the inference that there is no such permit, the ultimate burden of persuasion rests on the State, with the jury being at liberty to find the ultimate fact one way or the other.
>
> [Id. at 500.]

Here, as in Ingram, the State presented no evidence that defendant did not have a permit, but rather relied on the presumption permitted by N.J.S.A. 2C:39-2(b). As mandated by Ingram when relying on the presumption, the State requested, and the trial judge instructed the jury, "as with all elements, the State

bears the burden of showing beyond a reasonable doubt the lack of a valid permit and . . . you may draw the inference only if you feel it appropriate to do so under all the facts and circumstances," and told the jury if the State failed to prove any elements beyond a reasonable doubt they must find defendant not guilty.

Therefore, the State's reliance on the presumption without producing evidence of its own, where jury instructions were given indicating the burden remained on the State despite the presumption, is permitted under <u>Ingram</u>.

### III.

We reject defendant's argument from his pro se brief that Gonzalez' use of a single photo of defendant for identification purposes was in violation of proper identification procedure. "[A] 'confirmatory' identification . . . is not considered suggestive." <u>State v. Pressley</u>, 232 N.J. 587, 592 (2018). A confirmatory identification is where a witness identifies someone they already know but who they cannot identify by name, such as when a person is known to the witness "only by a street name." <u>Id.</u> at 592-93 (citation omitted).

Here, police were not attempting to have Echevarria identify someone unknown to her only based on what she witnessed that night. Rather, Echevarria had already stated someone she previously knew as "Suicide" was the one who shot at herself and her friends. The photo was merely confirming who "Suicide"

was and was therefore a non-suggestive confirmatory identification and not problematic under Pressley.

We also reject defendant's argument that his conviction should be overturned due to Echevarria's testimony she saw defendant with the gun prior to the night of the shooting. Defendant argues this portion of Echevarria's statement should not have been admitted under State v. Cofield, 127 N.J. 328 (1992), and that the judge failed to properly instruct the jury after admitting prior bad act evidence. The State argues that defendant's possession of a gun in his home is not inherently illegal, and thus is not a prior bad act subject to a 404(b)[4] test, but that even if it were, the Cofield prongs were satisfied.

The evidentiary ruling of a trial judge on the admissibility of evidence is "entitled to great deference and ordinarily should not be disturbed unless it is 'wide of the mark.'" State v. Fortin, 189 N.J. 579, 597 (2007) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

Under N.J.R.E. 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." However, other crimes, wrongs, or acts may be admissible for "other purposes, such as proof of motive, opportunity, intent,

---

[4] N.J.R.E. 404(b)

preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." Ibid. "The general principle stated in N.J.R.E. 404 applies only when evidence of a trait of character or other specific act is offered for the purpose of drawing inferences about the conduct of a person on a particular occasion." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1(b) on N.J.R.E. 404 (2019) (citing State v. Clark, 324 N.J. Super. 178, 189 (App. Div. 1999)).

Where a prior act sought to be admitted is not a criminal act and its probative value is outweighed by its inflammatory nature, it may still unduly prejudice the jury against a defendant. State v. Skinner, 218 N.J. 496, 500 (2014). In Skinner, a defendant's inflammatory rap lyrics, which were purportedly admitted to show motive and intent, but that were unrelated to the crime for which he was charged, were found to have a prejudicial impact that vastly outweighed any potential probative value. Ibid.

There was no separate hearing to determine whether Echevarria's testimony she saw defendant with the same gun was admissible under N.J.R.E. 404(b), but it was raised at the end of the Gross hearing. Defendant argues that while possession of a gun in his home might have been legal, it was too prejudicial. We agree with defendant the judge erred in admitting the statement,

but we consider it harmless under all the facts and circumstances of this case. While the trial judge found probative the fact that it was allegedly the same gun used at the shooting, not "just a gun" which would not be probative and would be prejudicial, we think that misses the point. That portion of the statement had little, if any, probative value, as Echevarria did not need to disclose she observed a gun in order to testify she could identify defendant after seeing him at Martinez's home.

However, in light of the other evidence against defendant—the surveillance videos showing the scene of the shooting, the actual shooting, and the shooter's build, hair, and facial features—the fact that Echevarria testified she saw defendant with the same gun before was not likely central to the jury's conviction, but simply corroborated her identification. During trial, the record reflects that the gun itself and tying that specific gun to defendant was not the central subject of the identification, but rather defendant's distinctive hair, build, and facial hair, and whether it matched that of the shooter on the surveillance videos, which the jury asked to view several times.

We also reject defendant's argument that Echevarria's testimony about the gun she saw that night was the "same gun" defendant possessed at his house on an earlier date was an impermissible lay opinion in violation of N.J.R.E. 701.

Rule 701 states that a witness not testifying as an expert may testify "in the form of opinions or inferences . . . if [the testimony] (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue."

Here, the fact at issue was not whether defendant used the same gun in the shooting—the State did not even produce a gun and attempt to tie it to defendant. Rather, the fact at issue was whether Echevarria recognized defendant as the shooter, and her testimony as to seeing defendant with a gun was based on her perception and related to her testimony that she had seen defendant at Martinez's home before.

IV.

Finally, we reject defendant's sentencing arguments. Defendant argues that the trial judge double counted prior gun offenses, first by imposing an extended term which doubled the sentencing range, and again by using defendant's prior history as an aggravating factor to impose a sentence "far above the applicable midpoint."

"[We] review sentencing determinations in accordance with a deferential standard," and "must not substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014). We review to determine

whether sentencing guidelines were violated, whether the aggravating and mitigating factors found were based upon competent credible evidence in the record, and whether the application of the guidelines to the facts of the case "make the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364-65 (1984).  A trial judge "has discretion to adjust a sentence upward from the presumptive term after weighing aggravating and mitigating factors" under N.J.S.A. 2C:44-1(a) and (b).  State v. Vasquez, 374 N.J. Super. 252, 268 (App. Div. 2005).

Citing Vasquez, 374 N.J. Super. at 267, defendant argues that using the same convictions as both a basis for finding a defendant should be sentenced to an extended term, as well as a basis for finding an aggravating factor to increase the length of a defendant's sentence, is prohibited "double-counting."  However, Vasquez does not require a different sentence in this case.

Here, while discussing aggravating factors, the trial judge mentioned the 2016 conviction that triggered the extended term, as well as defendant's current conviction for which he was being sentenced.  However, the judge specifically noted defendant had an extensive criminal history dating back to 2002 and had been involved in violent behavior since the age of thirteen.  The trial judge found

22

the aggravating factor of the need to deter based on "[t]he extent and seriousness of [defendant's] prior record." (emphasis added).

The record reflects the trial judge did not "double-count" the offense that triggered the extended term as an aggravating factor, but rather found the aggravating factor based on the "competent credible" evidence of defendant's extensive criminal history. Therefore, there was no abuse of discretion here.

While defendant argues there are cumulative errors that deprived him of a fair trial, a review of the record indicates there was only a single error that was harmless under the facts and circumstances of this case, and that defendant did receive the benefit of a fair trial. We do not address defendant's remaining arguments as they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-5242-17T4